ARTURO H. GÉIGEL, JR., demandante y recurrente, *v.* DR. M. A. MARIANI y su esposa JANE NICOLE DE MARIANI, demandados y recurridos.

Número: 12607  Resuelto: 16 de marzo de 1962

*Juan Enrique Géigel, Guillermo Silva, Jaime A. García Blanco y Hernán G. Pesquera,* abogados del recurrente; *F. Fernández Cuyar,* abogado de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Arturo H. Géigel, ingeniero contratista, edificó una casa para el Dr. Mariani. A la fecha de la entrega el Dr. Mariani adeudaba $4,413.56 al contratista. Éste instó un pleito para recobrar lo adeudado. El Dr. Mariani admite la deuda pero reconvino por la cantidad de $4,602.74. Alega es la cantidad necesaria para corregir una serie de deficiencias de que adolece el inmueble objeto del contrato. Celebrado el juicio el tribunal de instancia declaró con lugar la reconvención por la cantidad de $4,425.74. Condenó pues al demandante

a pagar al demandado la cantidad de $12.18. Además de las costas le impuso al demandante el pago de $300 de honorarios de abogado.

Recurre ante nos el contratista. Acepta las deficiencias en la obra que montan a $410.74, pero impugna la partida de $4,015 que el tribunal sentenciador determinó costaba corregir las filtraciones y los defectos del techo. Sostiene que las deficiencias que la corte a quo determinó existían en el techo de la casa no se debían a vicios de construcción. En eso basa su recurso. ■

La responsabilidad del contratista por vicios de construcción emana del art. 1483 del Código Civil. (31 L.P.R.A. sec. 4124.) (¹) Dispone así dicho precepto:

"El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años."

El abolengo de este artículo de nuestro Código se remonta a Graciano y Teodosio, quienes establecieron por una constitución que el constructor de edificios públicos y sus herederos respondían, durante quince años, por vicios en la construcción. Véase Traviesas, *Contrato de Arrendamiento*, Revista Derecho Privado, Vol. VI, págs. 34, 45 (1919). "Aunque la ley romana habla de obras públicas, fue preciso ampliarla a todas en general, porque en todas puede tener lugar la razón que le sirve de fundamento." Gutiérrez Fernández, *Estudios Fundamentales Sobre el Derecho Civil*

---

(¹) Corresponde al art. 1591 del Código Español. El art. 1792 del Código Civil francés es similar. Dispone así:

"Si el edificio construído por precio alzado se arruina en su totalidad o en parte a consecuencia de un vicio de construcción, aun cuando se trate de un vicio del suelo, el arquitecto y el contratista serán responsables durante diez años."

*Español,* Vol. IV, pág. 455 (1era. ed. 1869). En España aparecen disposiciones similares, sin estar limitadas a edificios públicos, en la Tercera Partida, Título XXXII, Ley XXI y en la Quinta Partida, Título VIII, Ley XVI. Así, desde tiempos antiguos se ha hecho responsable al que edifica de las resultancias de una mala construcción.

En nuestros tiempos encontramos disposiciones análogas en los Códigos Civiles de Alemania, art. 638; Argentina, art. 1648; Bolivia, art. 1195; Brasil, art. 1247; Colombia, art. 2060; Cuba, art. 1591; Chile, art. 2003; Ecuador, art. 1994; El Salvador, art. 1791; España, art. 1591; Filipinas, art. 1591 (1719, Código Civil de 1950); Italia, art. 1669; Luisiana, art. 2762; México, art. 2634; Panamá, art. 1343; Perú art. 1556; Suiza, art. 365; Venezuela, art. 1695.

Vemos, pues, que ha sido preocupación de los legisladores desde tiempos de Roma el hacer responsable al constructor de los defectos de las obras que construya. ■

La responsabilidad del contratista no se limita al caso en que el vicio de construcción ocasiona la ruina total de lo edificado. Es responsable también de la ruina parcial. El Tribunal Supremo de las Islas Filipinas considera esta cuestión en el caso de *Limjap* v. *J. Machuca & Co.,* 38 Jur. Fil. 478, 481 (1918) cuando expresa:

"Este argumento se funda en la interpretación literal de las palabras 'se arruinase' que aparecen en el artículo 1591 [igual al 1483 nuestro]. No podemos estar conformes con la apelante. A menudo puede ocurrir que al descubrirse que en un edificio existe un defecto debido a su deficiente construcción, si se repara con prontitud el defecto podrán así evitarse grandes daños al edificio a un costo relativamente pequeño, mientras que si se abandona puede con el tiempo ser causa de total destrucción del edificio. Según la teoría de la apelante, si el dueño se cruza de brazos y deja que el edificio se desmorone, podrá, una vez que el edificio haya quedado completamente destruido, cobrar al contratista todo su valor, pero si toma inmediatamente las medidas necesarias para reparar la obra defectuosa, y limitar de este modo la cuantía de los daños, deberá

ser de su cuenta el gasto en que por ello incurra. La simple enunciación de esta proposición basta para demostrar lo absurda que es. Por el contrario, es deber del damnificado por la infracción de un contrato el ejercitar el debido cuidado y diligencia para evitar pérdidas y aminorar la cuantía de los daños y perjuicios que provengan de aquélla."

Véanse además, *González* v. *Agostini*, 79 D.P.R. 510 (1956); Scævola, Código Civil, Vol. 24, 2da Parte, págs. 98 y 99 (ed. 1951); Velázquez, *Responsabilidad por los Defectos en las Edificaciones*, 20 Rev. Jur. U.P.R. 13 (1950). ■

Se ha determinado asimismo que por vicio de construcción se entiende "defectos en la construcción". Sentencia del Tribunal Supremo de España de 20 de abril de 1915, (133 Jurisprudencia Civil 156, 166); Puig Peña, Tomo IV, Vol. 2 Tratado de Derecho Civil Español, pág. 306 et. seq. (ed. 1951); Manresa, Vol. 10 Código Civil Español, pág. 919 (ed. 1950). Y para determinar en qué consisten los vicios o defectos comprendidos en las disposiciones del artículo que consideramos, nos parece que Colin y Capitant lo exponen suscintamente al sostener "que la responsabilidad del constructor, comprende, generalmente, todas aquellas clases de vicios que excedan de la medida de las imperfecciones que cabe esperar en una construcción". Colin y Capitant, Vol. 4, *Curso Elemental de Derecho Civil*, pág. 349 (ed. 1925). ■

La obligación de indemnizar es una obligación establecida a favor de cualquier propietario que adquiera el edificio, siempre que la reclamación se efectúe en el tiempo que señala el artículo 1483. Traviesas, *op. cit.* pág. 454; Castán, *Derecho Civil Español Común y Foral*, Vol. 4, pág. 491 (ed. 1956); Santamaría, *Comentarios al Código Civil*, pág. 639 (1958). ■

Se ha sostenido además que no releva de responsabilidad al arquitecto, o al contratista, en su caso, el que se establezca que se le llamó la atención al dueño de los vicios de la propuesta construcción. Es obligación del contratista en ese

caso no proceder a construir la obra. La razón para que esto sea así es que se considera de enorme interés público la seguridad de lo que se edifica. *González* v. *Agostini,* supra.([2]) Está envuelto en ello tanto la seguridad del dueño, como del público en general. El desplome de una obra afecta tanto al dueño como a la comunidad, y como el ingeniero contratista es un técnico conocedor de su arte, la ley le impone la obligación de rehusar construir, si la obra propuesta no reúne las condiciones de seguridad que la profesión, las leyes y los reglamentos requieren.

Como dice Traviesas en el artículo antes citado a la pág. 45:

"Se sostiene que la responsabilidad del contratista y del arquitecto es de orden público, y que la responsabilidad no queda excluída porque el suelo o la materia sean proporcionados por el dueño, con excepción del caso en que el contratista no tenga obligación de conocer los vicios del suelo.

Si esto es así, el contratista responderá, por regla general, de toda clase de vicios que deba conocer según la diligencia a que esté obligado (artículos 1.104 y 1.101 Código civil). El contratista es, además, responsable del trabajo ejecutado por las personas que ocupare en la obra (artículo 1.596 Código civil), y el arquitecto puede ser una de estas personas."

A ese efecto expone Manresa refiriéndose a los arquitectos, pero que es de igual aplicación a los contratistas:

"Queremos también hacer constar que el Arquitecto, en nuestra opinión, no se libra de responsabilidad si la causa de la ruina es el vicio del suelo, aunque demuestre que dio oportuno aviso de ese vicio al propietario, pues su deber en tal caso no es seguir las indicaciones de éste, sino resistirse a hacer la obra. El interés público así lo exige." Manresa, *op. cit.* pág. 921.

Y Colin y Capitant sostienen en la obra ya citada a la pág. 347:

---

([2]) El caso de *González* v. *Agostini,* 79 D.P.R. 340 (1956) revocó *sub silentio* el caso de *Pueblo* v. *Berríos,* 54 D.P.R. 509 (1939) que sostenía que el código era supletorio y se podía pactar contrario a lo dispuesto en el art. 1483.

"Pero la demostración de una culpa imputable al mismo dueño, por ejemplo, el hecho de que ha sido él el que ha trazado los planos, no sería para el constructor una causa de exención de responsabilidad, ya que, en efecto, él no debió acatar órdenes peligrosas o planos defectuosos."

Véase además: Velázquez, *op. cit.* pág. 25.

Es interesante apuntar que el propio perito del contratista en este caso, el Sr. De Castro, declaró lo siguiente demostrando que parecería conocer cuál debe ser la práctica en una situación como la que discutimos:

"P.—Señor De Castro, en relación con estas últimas preguntas del Compañero Fernández Cuyar; de tener usted un contrato firmado ya para construir una obra y que se haga luego el cambio del techo, dice usted que no haría el techo?

R.—Yo no aceptaría el cambio, digo después de yo hacer las advertencias pues no lo hago.

P.—¿Aunque tenga un contrato firmado?

R.—Bueno, ese es un punto hasta dónde uno pueda parar un contrato. Ahora yo tuve un caso de un techo de esos en que el dueño no quiso poner el *build-up-roofing* y me dijo: 'Pues si se cuela o no se cuela yo respondo'.

P.—¿Y qué hizo usted?

R.—En esas condiciones se le puso el techo.

P.—En un caso como éste en que el dueño dice que no acepta la responsabilidad; ¿usted no hace el techo?

R.—No señor.

P.—Y si usted tiene el contrato firmado ya, ¿no haría el techo?

R.—Bueno, yo me asesoraría con mi abogado."

¿Establece el art. 1483 una presunción de culpa que obligue al contratista a demostrar que él no es responsable de los vicios de construcción?

Los comentaristas no están acordes en cuanto a la solución correcta de la cuestión que ahora consideramos. Se aducen argumentos a favor de una y otra posición. Manresa, *op. cit.* pág. 921 sostiene que el art. 1483 no establece una presunción de culpa contra el contratista; Scævola, en la obra citada a las págs. 104, 105 se inclina a coincidir con

Manresa pero cita varios comentaristas que sostienen lo contrario y termina citando de Marcadé y Chironi:

"Marcadé reputa errónea la doctrina de Duvergier y Troplong. 'Todas las veces, escribe, que una construcción perece antes de terminar el plazo de garantía, es incuestionable que no muere por vetustez. Si la pérdida no es por fuerza mayor, incendio, inundación, terremoto, excavaciones en los cimientos, etc., se debe irreductiblemente a vicios constructivos. Y como los casos fortuitos no se presumen, y su prueba es fácil, síguese que la presunción se establece contra el arquitecto o el empresario, quienes responderán del perecimiento mientras no prueben la existencia del caso fortuito, hecho excepcional, único, que puede liberarlos'.

Chironi, en su notabilísimo tratado de la culpa en el Derecho moderno, trata incidentalmente la cuestión en una nota a la sec. 68. Después de explicar la razón del plazo decenal de garantía para asegurar al dueño contra la posible existencia de vicios ocultos que no se puedan advertir en el momento de la entrega, dice: 'La garantía en verdad queda perfectamente establecida y asegurada mediante el otorgamiento de la referida responsabilidad decenal del arquitecto o constructor; y aun mejor con la presunción, por virtud de la cual la ruina total o parcial acaecida dentro de los diez años, se deriva de vicio oculto por incumplimiento de la obligación.' "

Luego de Scævola considerar extensamente la cuestión se expresa así:

"Significa, cuanto antecede que, sin contener el art. 1591 una presunción declarada por modo expreso, tiene ambiente presuntivo, porque así lo requiere uno de los dos supuestos que potencialmente en él residen; y por ello, cuando no sea factible afirmar la causa de la ruina, hay que presumir, con Duvergier que por la misma naturaleza de la cosa arruinada, la causa del perecimiento no pudo ser otra que el vicio de la construcción. . . ". Scævola, *op. cit.* págs. 107–108.

El Código de las Siete Partidas establecía la presunción. La Ley 21 de la Partida Tercera que antes citamos disponía:

"Et si por aventura la labor que fuese fecha de nuevo se derribase ó se moviese ante que fuese acabada ó quince años después que fuese fecha, sospecharon los sabios antiguos que

"por mengua, ó por culpa ó por falsedat de aquellos que eran puestos por facerla, conteciera aquel fallescimiento. Et por ende ellos et sus herederos son tenudos de la refacer á su costa et á su misión, fueras ende si las labores se derribasen por ocasion, asi como por terremotos, ó por rayo, ó por grandes avenidas de rios ó de aguaduchos o por otras grandes ocasiones semejantes destas." Las Siete Partidas del Rey don Alfonso El Sabio, Tomo 1ro., ed. 1846.

Planiol y Ripert al considerar la cuestión mantienen que el artículo correspondiente al nuestro del Código Civil francés establece la presunción aunque la limitan a cuando el contrato es por precio alzado. 11 Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés*, pág. 196 et. seq. (ed. 1940). Véanse además: 5 Aubry y Rau, *Droit Civil Francais*, sec. 374, pág. 406 (ed. 1952); 2 Josserand, *Derecho Civil*, Vol. 2 pág. 236 (ed. 1951). Colin y Capitant, comentando sobre la distinción dicen:

"Esta distinción que acabamos de señalar es evidentemente muy arbitraria; más, sin embargo tiene una ventaja práctica, que es la de que, en el caso de una contrata a tanto alzado, debiendo resultar el beneficio del constructor de las economías que lleve a cabo, bueno será conminarlo con sanciones más rigorosas a fin de que no trate de hacer excesivas economías." Colin y Capitant, *op. cit.* pág. 347–348.

Y en verdad nos parece arbitrario el que se sostenga que existe una presunción de culpa de parte del contratista cuando la obra se construye a precio alzado y no cuando se efectúa según presupuesto. Nos parece arbitraria porque la razón de la presunción indudablemente es que el contratista está en mejor posición para demostrar cuál es la verdadera razón de la ruina. ▮

Entendemos que lo razonable, es, que una vez que el dueño de la edificación demuestre que la obra está en ruinas, es al contratista a quien incumbe demostrar que la ruina no se debe a vicios de construcción, independientemente del hecho de que la obra se hubiere realizado a precio

alzado o según presupuesto. Fuzier-Herman, *Code Civil Annoté. Tome sixieme*, art. 1792, pág. 441.

Consideramos que el contratista está en mejor posición para demostrar que la ruina no se debe a defectos en la construcción de la obra. Sabemos de las continuas innovaciones que se hacen hoy día en la construcción de casas en conjunto con el propósito de disminuir el costo. Nos parece más justo el que los contratistas que han hecho estas innovaciones tengan la obligación de demostrar que cualquier ruina de la obra construída no se debe a fallas de la construcción.

En los estados de la Unión no existe la garantía estatutariamente establecida en la mayoría de las jurisdicciones del derecho civil. Para un estudio de la ley en aquellas jurisdicciones, véanse: 6 Williston *on Contracts*, Revised Edition, sec. 1964 et seq.; Berrick, *Warranties in Building Contracts*, 6 U. Cinc. L. Rev. 121 (1932); Nota 21 Mim. L. Rev. 70 (1936); Selker, *Right of Purchaser in Sale of Defective House*, 4 W. Rec. L. Rev. 357 (1953); *State* v. *Commercial Casualty Ins. Co.*, 248 N. W. 807 (Neb. 1933); Anotación 88 A.L.R. 797; *United States* v. *Spearin*, 248 U.S. 132 (1918). En Luisiana, donde existe una disposición similar a la nuestra, ha tenido gran influencia el concepto imperante en los otros estados de la Unión. *Brasher* v. *City of Alexandria*, 41 So.2d 819 (1949); *Braube* v. *Ruth*, 114 So.2d 879 (1959). Mc Murdf, *Building Contracts in Louisiana*, 7 La. L. Rev. 564 (1947).

Explicada la ley nos toca ahora aplicarla a los hechos de este caso.

El Dr. Mariani convino con el ingeniero Géigel la construcción de una casa residencia. Originalmente la casa estaba diseñada con un techo de torta reforzada de cuatro pulgadas de espesor. Habiéndose ya iniciado la construcción del inmueble el Dr. Mariani decidió sustituir el diseño del techo por otro que según se describió durante el juicio, se construye a base de bloques de terracota con vigas de hor-

migón a lo ancho de cada bloque y sobre éstos una torta de hormigón de dos pulgadas de espesor.

El tribunal de instancia en sus determinaciones de hecho estableció que "después de entregada la obra y antes de transcurrido un año de dicha entrega comenzaron a aparecer distintas deficiencias o defectos en la misma, principalmente en la construcción del techo o azotea de hormigón en el que hay grandes, serias y continuas filtraciones que han dañado los plafones de la casa y la pintura de sus paredes, así como acumulación o empozamiento del agua en el techo por falta de adecuados desagües y declives." La existencia de las filtraciones y la seriedad de las mismas está aceptada por el contratista. Su defensa es que no se debe a defectos en la construcción.

A pesar de que una vez establecido el estado ruinoso del edificio, incumbe al contratista demostrar que la ruina no se debe a vicios de construcción, el dueño, en el caso de autos presentó al perito ingeniero señor Beltrán con más de cuarenta años de experiencia para demostrar que el techo de la casa no tenía suficientes declives y que los tubos para el desagüe eran más pequeños que los requeridos para el techo en cuestión. Y a esa prueba le dio crédito el juez de instancia.

El ingeniero señor Géigel parece querer evadir la responsabilidad que le impone el artículo 1483 invocando una comunicación que él enviara a los dueños de la casa donde hacía constar que no se hacía responsable en casos de que ocurrieran filtraciones. Ya hemos visto que esto no lo exonera de responsabilidad. Su deber era no construirlo si creía que el techo no era adecuado.

Por otro lado, la propia prueba presentada por el ingeniero atribuyó las filtraciones a otra causa. Cuando el ingeniero Géigel declaraba informó que el hormigón usado en el techo tenía una proporción de 1–2–4 o sea una parte de cemento, dos de arena y cuatro de piedra. Manifestó que

se empezó con esa liga pero que más tarde hubo que refor-
zarla, pero no dice qué proporción se usó finalmente ni en
qué etapa del trabajo se hizo el cambio. Entonces cuando
declara el perito del ingeniero, el arquitecto señor De Castro,
manifiesta que es de gran importancia como se hace la liga,
que es de decisiva importancia, y que un error en la liga
puede ocasionar ciertas y serias irregularidades o defectos
en la torta. (T. de E. pág. 303–304.) Más adelante el
perito señor De Castro manifiesta que la liga que él usa
es de 1–2½–3½ y comenta cuando le preguntan si esa es
una liga adecuada: "Yo me atrevo a decir que sí porque
aquí uno habla de una liga de 1–2–4 como una gran liga
cuando no lo es porque es una liga que está falla de arena,
lo que llamamos en Puerto Rico *under sand* . . . y no es
igual que la otra de 1 parte de cemento, 2½ de arena
y 3½ de piedra". (T. de E. 316.)

Así vemos que el dueño en el presente caso con su perito
estableció que las filtraciones se debían a falta de desagües
adecuados y a que el techo no tenía los desniveles necesarios
para que el agua no se empozara. Y la prueba del contra-
tista lejos de demostrar que la ruina parcial de la casa del
Dr. Mariani no se debía a defectos de construcción tendió
a demostrar que la liga usada en la torta del techo no era
la más recomendada. ▪

Sostiene el contratista que a él no se le puede condenar
a pagar lo que cuesta poner el techo a prueba de filtraciones.
Pero la prueba demostró que las filtraciones se debían a
vicios de construcción. "La construcción defectuosa impone
al arquitecto o al contratista la obligación de reparar su
culpa *para lo porvenir* restituyendo al edificio todas las cua-
lidades de una buena construcción". Colin y Capitant,
*op. cit.* pág. 349. Así, estuvo correcto el tribunal de instan-
cia en condenarlo a pagar lo que se demostró cuesta restituir
al techo "todas las cualidades de una buena construcción".

*Se confirmará la sentencia apelada.*