RAFAEL RIVERA RODRÍGUEZ Y MARÍA I. ORTIZ MELÉNDEZ, demandantes recurridos, *v.* LAS VEGAS DEVELOPMENT CO., INC., demandada peticionaria.

Número: O-77-423          Resuelto: 30 de mayo de 1978

*Hermenegildo Colón Vázquez* y *Federico Rodríguez Gelpí,* abogados de la peticionaria; *Alejandro Torres Rivera* y *Luis F. Abréu Elías,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Plantea este litigio un importante aspecto de la responsabilidad decenal de los empresarios de obra. La cuestión se ha debatido largamente en los países donde todavía prevalecen, como en Puerto Rico, códigos civiles de antigua factura. Los ordenamientos modernos proveen usualmente una solución específica al problema.

He aquí los hechos. La recurrente, Las Vegas Development Co., Inc., construyó una urbanización en Cataño. La casa objeto de esta controversia fue originalmente vendida por la constructora el 27 de abril de 1966. Los recurridos advinieron dueños de la vivienda el 15 de mayo de 1972. En

1975 aparecieron grietas en el piso. Desde entonces hasta mayo de 1976 los nuevos propietarios le reclamaron extrajudicialmente a la constructora la reparación de las grietas. Varios meses más tarde, ante la inacción de la recurrente, los recurridos demandaron a la constructora en el Tribunal de Distrito, exigiendo dos mil dólares como indemnización.

La constructora recurrente interpuso moción de desestimación fundada en el hecho de que la demanda se había presentado transcurridos diez años a partir de la recepción de la obra. Sostuvo la recurrente que el referido plazo es tanto plazo de garantía como término de caducidad para la radicación de la demanda. El Tribunal de Distrito declaró sin lugar la moción de la constructora. El Tribunal Superior confirmó esta determinación. Acordamos revisar.

El Art. 1483 de nuestro Código Civil, 31 L.P.R.A. sec. 4124, dispone:

"El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años."

La disposición citada es copia del Art. 1591 del Código Civil Español, el que a su vez deriva de los Arts. 1792 y 2270 del Código Civil Francés. En *Géigel* v. *Mariani*, 85 D.P.R. 46 (1962), se traza su historia.

La doctrina española está dividida en cuanto a si el artículo en cuestión establece un plazo único tanto para que surjan los vicios como para interponer la acción legal o si existen dos plazos, uno para que se manifiesten los defectos y otro para incoar la demanda correspondiente. A favor de la segunda teoría se pronuncian Manresa, *Código Civil Español*, tomo X, vol. II, ed. 1969, pág. 708; Scaevola, *Código Civil*, tomo XXIV, vol. II, ed. 1951, págs. 108–109; Cadarso Palau,

*La Responsabilidad Decenal de Arquitectos y Constructores*, Madrid, 1976, pág. 333; Bonet Ramón, *Derecho Civil Común y Foral*, tomo II, ed. 1940, pág. 114; Fernández Hierro, *La Responsabilidad Civil por Vicios de Construcción*, 1976, pág. 146, y varios otros autores. Cadarso Palau, *loc. cit.* Los partidarios de esta posición difieren entre sí respecto a la duración del término para incoar la acción. Muchos estiman que, transcurridos los diez años de garantía, el propietario disfruta de quince años adicionales, el término de prescripción dispuesto para las acciones personales, para interponer la demanda correspondiente. Otros consideran que el plazo adicional es de un año. Manresa, *op. cit.*, 708; Scaevola, *op. cit.*, 108–109; Fernández Hierro, *op. cit.*, 148–149; y Diez-Picazo y Gullón, *Sistema de Derecho Civil*, vol. II, 1976, págs. 342–343, favorecen el término de quince años. Cadarso Palau, *op. cit.*, 339–342, se pronuncia a favor de un término más corto.

El sistema del plazo único ha sido adoptado por Traviesas, *Contrato de Arrendamiento*, 6 Rev. Der. Privado 1 (1919), a quien citan con aprobación Castán, *Derecho Civil Español, Común y Foral*, tomo 4°, 10ª ed., 1977, pág. 492; Puig Brutau, *Fundamentos de Derecho Civil*, tomo II, vol. II, 1956, pág. 396, n. 11; Santamaría, *Comentarios al Código Civil*, tomo II, 1958, pág. 639; y Puig Peña, *Compendio de Derecho Civil*, tomo IV, 3ª ed., 1976, pág. 171, n. 19.

La jurisprudencia española no ha resuelto definitivamente los conflictos reseñados. Véanse: S. de 29 de marzo de 1966, 33 Aranzadi 1045–1046; S. de 22 de noviembre de 1971, 38 Aranzadi 3613; y S. de 28 de noviembre de 1970, 30 Aranzadi 3598. La S. de 11 de octubre de 1974, 41 Aranzadi 2903, y algunas de las opiniones citadas parecen favorecer la teoría de los dos plazos, inclinándose a la posición de que el segundo es de quince años.

En tres ocasiones diferentes este Tribunal se ha expresado a favor de la doctrina del plazo único. En *González* v. *Agostini*, 79 D.P.R. 510, 521, n. 9 (1956), dijimos: "En cuanto

a los vicios ocultos . . . el demandante, podrá, de arruinarse el edificio por vicios ocultos de la construcción, reclamar los daños dentro del plazo decenal fijado por la ley." En *Géigel* v. *Mariani*, 85 D.P.R. 46, 50 (1962), citando a Traviesas, Castán y Santamaría, declaramos: "La obligación de indemnizar es una obligación establecida a favor de cualquier propietario que adquiera el edificio, siempre que la reclamación se efectúe en el tiempo que señala el artículo 1483." Reiteramos esta expresión de *Géigel* en *Coop. de Viviendas* v. *Villas de Navarra*, 104 D.P.R. 718, 719 (1976).

Los propietarios recurridos atacan esta serie de decisiones a base de *Bartolomei* v. *Tribunal Superior*, 98 D.P.R. 495, 497 (1970), donde señaló el Tribunal:

"No debe confundirse el término legal que para el ejercicio de la acción tenga el dueño del edificio arruinado, con el plazo decenal de garantías. La acción puede prescribir si no se acude en tiempo al tribunal. El otro término, el de los diez años, es uno dentro del cual debe ocurrir la ruina del edificio por vicios de construcción, para que el contratista sea responsable."

La única cuestión verdaderamente planteada y resuelta en *Bartolomei* era si en la demanda debía alegarse que la ruina había ocurrido dentro del plazo decenal. Aun así, examinemos cuál debe ser la norma que rige en esta jurisdicción, si la consignada en *González, Géigel* y *Villas de Navarra* o la aludida en *Bartolomei*.

Hace casi un siglo que la cuestión que nos preocupa aquí fue definitivamente resuelta por la Corte de Casación del país cuyo código fue base del español. La Corte de Casación de Francia optó en 1882 por la teoría del plazo único, bajo ataque entonces por muchos comentaristas defensores de la doctrina de los dos plazos. Cass. Chambres réunies, 2 de agosto de 1882. D. 83-I-5. La jurisprudencia francesa actual sostiene la misma posición. 3 Dalloz, *Répertoire de Droit Civil*, 2ᵉᵐᵉ ed., mise á jour 1977, "Contrat D'Entreprise", pág. 339 *et seq.* Los comentaristas franceses modernos son del mismo parecer. Soinne, B., *La Responsabilité des Architectes et En-*

*trepreneurs aprés la Réception des Travaux*, 2 vols., Paris, 1969, pág. 558 *et seq.*; Peter, P., *La Responsabilité Décennale des Architectes et Entrepreneurs*, Paris, 1963, pág. 21. Para las citas sobre la posición idéntica de Planiol y Ripert, Mazeaud y Tunc, Colin y Capitant, Liét-Veaux y otros autores, véase: Soinne, *loc. cit.*

Adviértase que el histórico fallo de la Corte de Casación de Francia ocurre precisamente en los últimos años de la redacción definitiva del Código Español. De haberse deseado rechazar la interpretación francesa era de esperarse que el lenguaje del Art. 1591 español hubiese sido distinto. El nuevo código habló de la duración de la acción de indemnización y no del plazo de garantía. El segundo párrafo del Art. 1591 dispuso expresamente, como se recordará, que "Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años."

Se ha criticado la doctrina del plazo único por razón de su rigurosidad. Puede caducar fácilmente la acción si la ruina del edificio ocurre o el vicio se manifiesta a punto de expirar los diez años de garantía. La contestación a este argumento es que la concepción estricta dé la responsabilidad decenal como término de garantía y plazo de caducidad para instituir la acción se debe precisamente al deseo de determinar el momento exacto en que expira la responsabilidad, evitando las querellas que pudiesen surgir a gran distancia de la entrega sobre el origen preciso del perjuicio alegado. Soinne, *op. cit.*, 560. [1] La doctrina del plazo único lo que produce en la práctica es un acortamiento del plazo de garantía, pero tal es la tendencia generalizada en los códigos modernos. La nueva legislación se inclina abrumadoramente a favor de recortar sustancialmente el plazo de garantía, a la par que fija en muchos casos términos de caducidad para la denuncia del vicio y el ejercicio de la acción. Nuestro Código

---

[1] Para otros argumentos sobre este particular, véase: Léonce-Richard, *Étude sur la Responsabilité Décennale*, s.f., Paris, pág. 51.

Civil se halla en este sentido en lamentable rezago frente a lo que está ocurriendo en muchos otros países.

El Código Civil Italiano de 1942 distingue entre tres plazos: uno de garantía—se mantiene todavía aquí el plazo de diez años—otro de un año para efectuar la denuncia y otro término de un año para radicar la acción. Cuneo, *Appalti Pubbliche e Privati*, 6ª ed., Padova, 1962, pág. 630; Cianflone, *L'Appalti di Opere Pubbliche*, 4ª ed., Milano, 1971, pág. 797 y ss.; Scialoja e Branca, *Dell' Appalti, arts. 1655–1677* (por Rubino), 1969, pág. 277 y ss. El Art. 1225 del Código Civil Portugués, de redacción más reciente, reduce el plazo de garantía a cinco años, manteniendo un año para el plazo de denuncia y otro para el ejercicio de la acción. En adición, la doctrina establece que el referido plazo garantiza tan solo las construcciones destinadas a durar considerable tiempo. Se excluyen las de orden más provisorio. Pires de Lima y Antunes Varela, *Código Civil Anotado*, Coimbra, 1968, vol. II, págs. 578–579.

En Suiza el plazo de garantía es igualmente de cinco años. Scyboz & Gilliéron, *Code Civil Suisse et Code des Obligations Annotés*, ed. Payot Lausanne, 1972, Art. 321 del segundo código, pág. 156. El patrón de cinco años se sigue, entre otros países, en Alemania (Art. 638 del B.G.B.—el plazo es menor en trabajos de cierta índole); Brasil (Art. 1245 del Código Civil Brasileño); Bolivia (Art. 1195 del Código Civil); Chile (Prat, *Nociones sobre el Contrato de Construcción Privada*, 1940, págs. 100–101, 125–126); Costa Rica (Vincenzi, *Código Civil*, 1966, pág. 199); Perú (Art. 1556 del Código Civil); y Marruecos (Art. 769 del Código de Obligaciones y Contratos—la acción debe interponerse en los treinta días siguientes al descubrimiento de la ruina o vicio). En Japón fluctúa el plazo de garantía entre dos y diez años, dependiendo del tipo de construcción (Art. 985 del Código Civil).

En Estados Unidos el plazo de garantía, fijado usualmente por legislación, fluctúa generalmente entre cuatro y

diez años. En California, Illinois y Tennessee el plazo es de cuatro años. En muchos estados es de siete años o menos. Sweet, *Legal Aspects of Architecture, Engineering and the Construction Process*, St. Paul, 1977, págs. 734, 844–845.

En Rusia el plazo es menor que en muchos países. La garantía del empresario de obra expira a los tres años. (Art. 229 del Código Civil.)

Consideramos irreal y poco sabia la teoría de añadirle a un plazo de garantía ya largo de por sí—fijado bajo otras circunstancias en el siglo XIX y conocido desde el Estatuto de Módena de 1327 A.D.—un plazo de quince años para el ejercicio de la acción, conforme el Art. 1864 de nuestro Código. Aun si se quisiese añadir por jurisprudencia tan solo el plazo de un año, se estaría actuando en contra de la doctrina repetidamente enunciada por este Tribunal desde 1956, con la posible excepción de *Bartolomei*, y, aún más grave, tendría que construirse la nueva doctrina sobre la endeble base de que la acción en estos casos es de naturaleza cuasidelictual. Véanse: Sánchez Fontáns, *El Contrato de Construcción*, Montevideo, vol. II, 1953, págs. 241–242; *González* v. *Agostini*, 79 D.P.R. 510, 518 (1956). La aconsejable tarea de modernizar nuestro código, utilizando el método de la creación de tres plazos al modo italiano, el portugués, el que ilustra el nuevo proyecto francoitaliano de Código de Obligaciones u otro análogo, está por necesidad en manos de la Asamblea Legislativa.

Se reafirma nuestra posición en *Géigel* v. *Mariani*, 85 D.P.R. 46, 50 (1962) y casos señalados. Se deja sin efecto toda otra expresión en contrario.

*Por las razones expuestas se revoca la resolución recurrida y se desestima la demanda en este caso.*

El Juez Asociado Señor Carlos J. Irizarry Yunqué disintió en opinión separada a la cual se une el Juez Asociado Señor Antonio S. Negrón García. Los Jueces Asociados Señores Marco A. Rigau y Angel M. Martín no intervinieron.

—o—

Opinión disidente del Juez Asociado Señor Irizarry Yunqué a la cual se une el Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 30 de mayo de 1978

Este Tribunal decide hoy que el plazo decenal de garantía del Art. 1483 del Código Civil, 31 L.P.R.A. sec. 4124, equivale al plazo dentro del cual tiene que ejercitarse la acción por daños y perjuicios causados como consecuencia de la ruina de un edificio. Las discrepancias entre los comentaristas permiten que halle apoyo en algunos de ellos la norma que este Tribunal adopta. Creo, sin embargo, que no es la mejor norma ni la más justa y por eso discrepo.

La primera regla de hermenéutica que debemos observar es aquella que atiende primero a la letra de la ley y a su significado ordinario y corriente. Dice el Art. 1483:

"El contratista de un edificio que se arruinase por vicios de la construcción, responde de los daños y perjuicios si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción; igual responsabilidad, y por el mismo tiempo, tendrá el arquitecto que la dirigiere, si se debe la ruina a vicios del suelo o de la dirección.

Si la causa fuere la falta del contratista a las condiciones del contrato, la acción de indemnización durará quince años."

El texto, en su primer párrafo, responsabiliza al contratista y al arquitecto "si la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción." No dice que son diez años para ejercitar la acción. Una cosa es el plazo de garantía de diez años dentro del cual tiene que ocurrir la ruina, y otra el plazo dentro del cual tiene que ejercitar la acción quien sufre daños. Ese plazo no puede ser de quince años, porque el segundo párrafo se encarga de fijar ese término cuando la acción se basa en "falta del contratista a las condiciones del contrato," es decir, cuando la acción es *ex contractu*. Si el plazo para el ejercicio de la acción, en

cuanto al primer párrafo, fuera quince años, sería innecesaria la especificación que hace el segundo párrafo. Como algún plazo tiene que haber *para el ejercicio* de una acción, éste no puede ser otro, en cuanto al primer párrafo, que el término prescriptivo de un año que para las acciones *ex delicto* señala el Art. 1868, 31 L.P.R.A. sec. 5298. (1)

La opinión de este Tribunal enfatiza que nuestro Art. 1483, que es copia del 1591 del Código Civil Español, deriva de los Arts. 1792 y 2270 del Código Civil Francés, y acoge el sistema de plazo único postulado por Traviesas, *Contrato de Arrendamiento*, 6 Rev. Der. Privado 1 (1919), basado a su vez en la interpretación de los citados artículos del Código Francés. El comentarista Gabriel García Cantero niega tal proposición y encuentra los antecedentes del Art. 1591 (1483 nuestro) en la Constitución dictada el año 393 por Graciano, Valentiniano y Teodosio, y en la Ley 21, Título 32 de la Partida Tercera. García Cantero, *La responsabilidad por ruina de los edificios*, 16 Anuario de Derecho Civil, 1054 (1963). Al mismo efecto véase *Géigel v. Mariani*, 85 D.P.R. 46, 48–49 (1962).

Hubo un intento en España de adoptar el estatuto del Código Francés mediante el Proyecto de Código Civil de 1851, que en su Art. 1532 decía textualmente:

"El arquitecto o empresario de un edificio responde durante diez años, si se arruinare por vicio de la construcción o del suelo. Esta responsabilidad tiene lugar, respecto del arquitecto, aun cuando no haya contratado la obra por un ajuste alzado."

Véase el parecido con los Arts. 1792 y 2270 del Código Francés, que disponen:

---

(1) "Sec. 5298. Acciones que prescriben al año

Prescriben por el transcurso de un año:

1. La acción para recobrar o retener la posesión.

2. La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 de este título desde que lo supo el agraviado."

Art. 1792: "Si el edificio construido a tanto alzado perece en todo o en parte por vicio de la construcción, o por vicio del suelo, el arquitecto y el empresario responden de ello durante diez años."

Art. 2270: "Después de diez años, el arquitecto y los empresarios quedan·liberados de la garantía por las grandes construcciones que han hecho o dirigido."

El Proyecto de 1851 redujo a diez años el plazo de responsabilidad—que en la Ley 21 era de quince, al igual que en el antiguo Derecho Romano—imitando en esto al Código Francés. García Cantero, *supra*, pág. 1090. Pero no pasó de ser un proyecto. El legislador español redactó el actual Art. 1591 (1483 nuestro), apartándose del Proyecto y del Código Francés. La diferencia es palpable. Mientras el Código Francés y el Proyecto de 1851 responsabilizan al empresario (contratista en nuestro caso) y al arquitecto "durante *diez años*," el nuestro les responsabiliza "si la ruina tuviere lugar dentro de diez años." Es claro que en el Código Francés hay un plazo único, que es de diez años, durante el cual el contratista y el arquitecto responden y dentro del cual tiene que haber ocurrido la ruina. En nuestro caso el contratista responde una vez ha ocurrido la ruina, si ésta ocurre dentro de diez años. La redacción del precepto nuestro no excluye, a diferencia del Código Francés y del Proyecto de 1851, un plazo distinto para el ejercicio de la acción para reclamar responsabilidad al contratista y al arquitecto.

Sobre la duración de la acción, dice García Cantero, *op. cit.*, págs. 1107–1108.

"e) La duración de la acción.

Esta cuestión es una de las cruciales en la interpretación del artículo 1.591. Para los autores que defienden el carácter contractual de la acción de responsabilidad fundamentado en el mismo (Manresa, Mucius Scaevola, De Buen, Valverde), en defecto de una norma especial, se ha de aplicar el plazo de quince años de prescripción de las acciones que no tienen otro señalado en la ley. Traviesas, en cambio, lo hace coincidir con la duración de la garantía, aceptando con ello la doctrina francesa predomi-

nante. Bonet Ramón dice que la prescripción de la acción contra el constructor o el arquitecto dura diez años, sin que se aclare si es un plazo coincidente con el de duración de la garantía, o es distinto, y en este caso cuál es el punto de arranque del mismo.

No cabe duda que la aplicación del plazo de quince años hace mantener por demasiado tiempo en estado de pendencia la liquidación de las consecuencias jurídicas de la ruina; mientras que hacer coincidir el plazo de duración de la acción con el plazo de garantía conduce a la consecuencia poco equitativa de que el perjudicado tendrá a su disposición un plazo variable, que será el máximo de diez años cuando la ruina ocurre inmediatamente después de la conclusión de la obra, y que será mínimo si acaece en las postrimerías de dicho período legal, pudiendo ser nulo si el edificio se derrumba la víspera de cumplirse el mismo. La jurisprudencia no ha tenido, que sepamos, oportunidad de pronunciarse sobre la cuestión.

Por mi parte, entiendo que el problema tiene fácil solución si se concibe como de naturaleza extracontractual dicha responsabilidad, y se aplica, en consecuencia, al plazo de un año que establece el artículo 1.968, 2do. . .; en virtud de esta prescripción corta, el período de pendencia del ejercicio de la acción contra los presuntos culpables es más razonable, ya que una vez producida la ruina dentro del período legal, no será necesario esperar a que transcurra éste íntegramente para que empiece a correr el plazo de prescripción. Pero el punto de arranque de ésta no se coloca en el momento de producción del daño sino—de conformidad con el artículo 1.968, 2do.—desde que lo supo el agraviado, conocimiento que debe extenderse también a la persona del culpable, pues de otra suerte no puede interponerse la demanda. La apertura del sumario interrumpe la prescripción, y por ello la sentencia de 12 de mayo de 1960 aplica el artículo 1.969 a un supuesto en que se siguió sumario, razón por la cual la acción civil no podía ejercitarse hasta que se declaró extinguida la acción penal."

La aplicación del plazo prescriptivo de un año de las acciones *ex delicto*, surge precisamente de que la acción contemplada en el primer párrafo del Art. 1483 es *ex delicto*, basada en culpa y negligencia, y no en violación de las condiciones del contrato, que es a la que se refiere el segundo pá-

rrafo de ese artículo, cuyo plazo prescriptivo es de 15 años, igual que el de las acciones personales que no tienen plazo señalado. Una vez más cito a García Cantero, págs. 1104–1105:

"El párrafo 1ro. del artículo 1.591 es una aplicación de la norma general del artículo 1.902; por ello, aunque no se diga expresamente, se requiere la culpabilidad del contratista y del arquitecto. Se responde por una actuación culposa o negligente desarrollada a propósito de la edificación de un inmueble, pero cuyos resultados no se manifiestan de momento, sino en un tiempo posterior que la ley fija en un máximo de diez años.

La exclusión del caso fortuito y de la fuerza mayor aparece con claridad en los precedentes romanos y españoles del artículo 1.591, se aceptó sin discusión por la doctrina del siglo XIX y es la opinión más autorizada en la doctrina extranjera. . . . También se excluyen las causas sobrevenidas con posterioridad a la construcción; así, si el dictamen pericial demuestra que la única causa de la ruina estriba en la falta de las reparaciones necesarias, entrará en aplicación el artículo 1.907. . . .

Lo que ocurre es que el párrafo 1ro. del artículo 1.591 viene a establecer una presunción *iuris tantum* de culpabilidad en el contratista y en el arquitecto. Arruinado un edificio y demostrado por una sumaria investigación que la ruina ha obedecido a vicio de la construcción, la ley presume la culpabilidad del contratista, o bien la del arquitecto si se debe a vicio del suelo o de la dirección; esta presunción, que viene a fortalecer la postura procesal de los perjudicados, se fundamenta en el interés público que inspira esta norma y en la dificultad de la prueba si, conforme a las normas generales de la responsabilidad extracontractual, correspondiese al actor la carga de la prueba de la culpa del autor del daño.

En la Ley 21, Tít. 32, Partida 3ra. ya se encuentran rastros de esta presunción legal al decirse: 'E si por aventura la labor que fuese fecha de nuevo se derribase, o se moviese ante que se acabase, o quince años después que fuese fecha, *sospecharon los Sabios antiguos que por mengua, o culpa, o por falsedad* de aquellos que eran puestos para fazerlas, aconteciera aquel fallezimiento'; lo cual se corrobora por la interpretación o comentario de Gregorio López . . . y de la doctrina del siglo XIX."

García Cantero alude al Art. 1907 del Código Español, equivalente al 1807 nuestro, 31 L.P.R.A. sec. 5146, que dice textualmente:

"Sec. 5146. Ruina de edificio

El propietario de un edificio es responsable de los daños que resulten de la ruina de todo o parte de él, si ésta sobreviniere por falta de las reparaciones necesarias."

El 1909 del español, 1809 nuestro, 31 L.P.R.A. sec. 5148, dispone:

"Sec. 5148. Defectos de construcción

Si el daño de que tratan las dos secciones anteriores resultare por defecto de construcción, el tercero que lo sufra sólo podrá repetir contra el arquitecto, o en su caso, contra el constructor, dentro del tiempo legal."

El "tiempo legal" a que se refiere este precepto no puede ser el de 15 años, pues defecto de construcción no es necesariamente significativo de violación de contrato, que es a lo que se refiere el segundo párrafo del Art. 1483. Además, se refiere este Art. 1809 al *tercero* que sufra el daño, y sólo puede tener condición de tercero quien no fue parte en el contrato ni trae causa de quien lo fue. De esta suerte, es inescapable que el tercero que sufre daños como consecuencia de la ruina de un edificio—un visitante lesionado al desplomarse parte del techo, para ejemplo—tendría un año para reclamar contra el arquitecto o contra el constructor, a partir del momento en que sufra el daño, siempre y cuando que la ruina ocurriera dentro de los diez años de garantía que establece el primer párrafo del 1483. Dice sobre el particular García Cantero, págs. 1094–1095:

"d) La tesis de la responsabilidad extracontractual es la única que permite una interpretación sistemática de los artículos 1.591 y 1.909, que atribuya a ambos plenitud de sentido. Acertó en este punto García Goyena cuando, con referencia al párrafo 2do. del artículo 1.903 del Proyecto de 1851, . . . decía que era más justo y humano que el Código francés y los demás extranjeros de su época, los cuales únicamente hacen responsable al propie-

tario de la ruina de un edificio, aunque ocurra por vicio de la construcción: con razón decía dicho autor: 'acuda el vecino dañado contra el solo culpable.'

Como antes indiqué, el primer párrafo del artículo 1.591 supone un tratamiento favorable, bajo ciertos aspectos, para constructores y arquitectos. En efecto, si prescindiéramos de dicho párrafo, no hubiéramos suprimido la responsabilidad extracontractual de estas personas, las cuales seguirían respondiendo conforme al artículo 1.902 sólo que sin límites temporales; así, probado el daño, la culpa o negligencia del constructor o del arquitecto, y la relación de causalidad, su responsabilidad era inevitable aunque la construcción del edificio datase de más de diez años. . . .

El mero hecho de que el citado precepto se halle situado dentro de la sección que regula las obras por ajuste o precio alzado no parece ser un argumento decisivo para definir la naturaleza de la responsabilidad en él regulada. En ello han influido, sin duda, los precedentes de las legislaciones extranjeras y del Proyecto de 1851, pero sin que—a diferencia de otras legislaciones—el mero dato de su colocación sistemática tenga aquí un valor absoluto."

Para mayor abundamiento de la tesis aquí sustentada, una vez más cito a García Cantero, págs. 1091–1092:

"Entiendo que la acción de indemnización basada en el primer párrafo del artículo 1.591 del Código civil español es de naturaleza distinta que la enunciada, tan esquemáticamente, en el segundo.

En efecto; en cuanto a aquella, y con relación al contratista, se trata de una sanción por incumplimiento de un específico deber de no dañar el patrimonio ajeno, en forma directa o indirecta . . . formulado con carácter general en el artículo 1.902 y aludido por remisión en el artículo 1.909; respecto del arquitecto, representa una sanción por incumplimiento de un deber de pericia profesional, consistente en la observancia de las reglas de su arte, tal como lo ha venido exigiendo la tradición jurídica española, aun cuando no esté expresamente recogido por ninguna disposición legal.

Hay que observar que la mención del arquitecto en el primer párrafo del artículo 1.591 ha sido conscientemente querida por el legislador, de modo que la expresión legal 'igual responsabili-

dad y por el mismo tiempo, tendrá el arquitecto que la dirigiere' viene a significar una acumulación, y no una yuxtaposición alternativa como en el artículo 1.532 del Proyecto de 1851.

Los deberes aquí contemplados son deberes legales por su origen, que el legislador ha estimado oportuno sancionar expresamente, con independencia y al margen de toda relación contractual. La responsabilidad se basa en un actuar culposo o negligente, por lo cual constituyen supuestos concretos de la responsabilidad por culpa extracontractual o aquiliana del artículo 1.902. No representan, en cambio, casos de responsabilidad objetiva; ni tampoco, pese a las apariencias, de responsabilidad por riesgo. El artículo 1.591, como luego expondré, viene a establecer una presunción *iuris tantum* de culpabilidad, a cargo del contratista y del arquitecto.

La responsabilidad expresada tiene su fundamento en el interés público, ya que a la comunidad interesa que las edificaciones destinadas a tener una duración prolongada estén construidas con arreglo a las reglas de la técnica, cuyo conocimiento se presume dentro del ámbito de su respectivo obrar en el contratista y en el arquitecto. . . .

La naturaleza jurídica que aquí se propugna de la responsabilidad ex párrafo 1ro. del artículo 1.591 tiene, respecto de la contractual, que es la predominante en la doctrina, las características siguientes: Representa una *agravación* para los obligados en cuanto que está legitimado para invocarlo cualquier perjudicado (haya o no contratado el arrendamiento de la obra) y, asimismo, porque establece una presunción *iuris tantum* de culpabilidad en su respecto. Pero, bajo otro aspecto, implican *un trato de favor* para los obligados—como lo hacía notar García Goyena . . . respecto del artículo 1.532 del Proyecto de 1851—en cuanto que limitan en el tiempo la duración de la garantía (que con base en el artículo 1.902 no tendría ninguna cortapisa temporal), así como reduce extraordinariamente la duración de la acción para hacer efectiva aquella responsabilidad (un año, al ser extracontractual, en lugar de quince años, de ser contractual)."

Dice la opinión de este Tribunal que "[en] tres.ocasiones diferentes este Tribunal se ha expresado a favor de la doctrina del plazo único." Y cita *González* v. *Agostini,* 79 D.P.R. 510 (1956); *Géigel* v. *Mariani,* supra; y *Coop. de Viviendas*

v. *Villas de Navarra*, 104 D.P.R. 718 (1976). Discrepo. No creo que resolviéramos eso en estos tres casos. Veamos.

(1) En *González* v. *Agostini*, se instó demanda por alegados vicios de construcción a los 6 meses y 9 días de entregado el edificio por el contratista. Este invocó la defensa de prescripción a base de que en el contrato suscrito con el demandante se estipuló un plazo de 30 días a partir de la entrega como plazo de garantía del contratista. (²) La cuestión a resolver por este Tribunal era si podía pactarse la liberación del plazo decenal de garantía del Art. 1483. Resolvimos que no, por estar afectada una cuestión de interés público, y que por estar envuelta la seguridad pública, la renuncia a dicho plazo es nula. Contrario a lo que ahora interpreta la opinión de este Tribunal, se distinguió en *González* v. *Agostini* entre el plazo de garantía y el plazo para instar la acción, señalándose que la garantía del contratista por vicios ocultos de la construcción dura diez años, es decir, que responde si se manifiestan dentro de ese plazo que es irrenunciable, mientras que la duración del plazo para formular reclamación, una vez se manifiesta la ruina del edificio, puede pactarse. Como sabemos, los plazos prescriptivos son renunciables. Dijimos, pág. 521:

"La cuestión que discutimos tiene importancia en la decisión de este caso porque como se recordará, cuando el demandante recibió el edificio ya conocía los vicios de construcción que motivan esta reclamación de daños y perjuicios. Si la recepción se hubiera hecho a plena satisfacción o sin reservas, el contratista, conforme a la doctrina expuesta anteriormente, hubiera quedado libre de responsabilidad por los vicios manifiestos que eran conocidos por el propietario ya que dicha aceptación implicaba

---

(²) Decía el contrato: "El contratista garantiza la obra a construirse por el contrato, cualquier defecto sea de materiales o de mano de obra y a requerimiento del propietario remediará cualquier falta que se desarrolle en la obra si dicha falta se debiera a defectos de materiales suplidos por el contratista o mano de obra suplida por el contratista, sin costo alguno para el propietario, por un término de treinta días después de ser entregado." *González* v. *Agostini*, supra, pág. 514.

una renuncia a reclamar por tales vicios. No así en cuanto a los vicios ocultos. Pero según hemos visto, el demandante protestó de los vicios ostensibles que conocía e hizo la recepción del edificio sujeto a esa reserva. Ante esta situación, ¿cuál era el plazo que tenía para establecer su reclamación por los daños sufridos a causa de los vicios de construcción aparentes y conocidos por él? A nuestro juicio, el de 30 días convenido por las partes. El pacto fijando un término de 30 días para reclamar por los vicios aparentes no es contrario a la ley ni al orden público. Por su naturaleza, ese pacto regula los derechos e intereses privados del propietario y el contratista. Por consiguiente, debe sostenerse la validez del pacto en lo referente a los vicios aparentes. En cuanto a los vicios ocultos, el pacto es nulo."

La expresión que se cita en la opinión del Tribunal en el caso ante nos, está fuera del contexto de la opinión en *González v. Agostini*, como parte de un escolio, y no pasa de ser un *dictum*, pues en dicho caso la acción se instó a los seis meses y días de terminada la obra. El plazo decenal de garantía no jugaba ningún papel.

(2) En *Géigel v. Mariani*, tampoco se planteó cuál es el término para instar la acción a que ahora nos referimos. Allí el contratista que construyó una casa para residencia del Dr. Mariani demandó a éste en cobro de dinero que alegó que se le adeudaba por motivo de la construcción. El Dr. Mariani reconvino por una cantidad mayor, en que valoró el costo de reparar determinados desperfectos que surgieron en la obra poco después de entregada, particularmente filtraciones en el techo. La acción que ambos ejercitaron se inició poco después de concluida la obra y remotamente antes de cumplirse los diez años.

La aplicación y exégesis que hizo este Tribunal del Art. 1483 obedeció a que el contratista reclamó que no era responsable de las filtraciones del techo, que era la partida mayor de daños, porque durante la construcción se varió a requerimiento del Dr. Mariani la estructuración del techo. Resolvimos, en línea con lo resuelto en *González v. Agostini*, que el contratista no podía evadir la responsabilidad que le impone

el Art. 1483 ya que "[su] deber era no construirlo si creía que el techo no era adecuado." (Pág. 56.) Hicimos un recuento histórico del origen del Art. 1483 y concluimos que, a diferencia del Código Francés, donde se establece una presunción de culpa contra el contratista y el arquitecto de una obra que se arruina total o parcialmente, si la obra fue construida por precio alzado, en nuestro sistema tal presunción aplica por igual tanto si la obra se construye a precio alzado como cuando se efectúa según presupuesto. Dijimos, pág. 54:

"Y en verdad nos parece arbitrario el que se sostenga que existe una presunción de culpa de parte del contratista cuando la obra se construye a precio alzado y no cuando se efectúa según presupuesto. Nos parece arbitraria porque la razón de la presunción indudablemente es que el contratista está en mejor posición para demostrar cuál es la verdadera razón de la ruina."

No se planteaba en *Géigel* la aplicabilidad de plazo alguno ni tenía que resolverse. Tampoco resolvimos qué plazo tiene el dueño o el que sufre daños como consecuencia de la ruina de un edificio para formular reclamación. La opinión de este Tribunal en el caso que ahora nos ocupa cita la siguiente expresión hecha en *Géigel*, pág. 50, para sostener su teoría del plazo único: "la obligación de indemnizar es una obligación establecida a favor de cualquier propietario que adquiera el edificio, siempre que la reclamación se efectúe en el tiempo que señala el artículo 1483." Precisamente eso es lo que teníamos que resolver aquí y que no teníamos que resolver ni resolvimos en *Géigel* v. *Mariani:* cuál es el plazo para ejercitar la acción que reconoce el Art. 1483. Interpretar tal expresión de *Géigel* como que adopta la teoría del plazo único es a mi juicio una incorrección.

Importante de *Géigel* v. *Mariani* es que adopta precisamente la postura que postula García Cantero de que el Art. 1483 establece una presunción *iuris tantum* de culpa del contratista y del arquitecto, lo que está en consonancia con la doctrina que establece que es el Art. 1802 el origen de la

acción, ex primer párrafo del 1483, con base en culpa o negligencia.

(3) En *Coop. de Viviendas* v. *Villas de Navarra*, tampoco se plantea en forma alguna, ni tenía que resolverse, ni se resolvió la cuestión del plazo. Allí se planteó si la Cooperativa de Viviendas, para quien se construyeron 28 unidades de vivienda por una empresa constructora, tenía causa de acción contra el arquitecto contratado por la constructora para reclamarle por vicios de las construcciones. El arquitecto alegaba que tratándose de una acción *ex contractu* bajo el Art. 1483, no tenía causa de acción en su contra la adquirente de las casas por no existir nexo contractual alguno entre ellos, es decir, entre adquirente y arquitecto. Nos negamos a aceptar esta contención y resolvimos que la acción que reconoce el Art. 1483 puede ser ejercitada por cualquier propietario. Dijimos, pág. 719:

"Se ha establecido en el derecho civil español que la responsabilidad que le impone al arquitecto el Art. 1591 del Código Civil Español, equivalente al Art. 1483 del nuestro, beneficia a cualquier propietario de la construcción, siempre que la acción se inste dentro del plazo señalado por el código." Sigue entonces una cita de Manresa.

Como se ve, *Cooperativa de Viviendas* no establece término alguno para el ejercicio de la acción, y lo que hace es mencionar, de paso, que la persona que la ejercite debe hacerlo "dentro del plazo señalado por el código," sin decir cuál es ese plazo.

Dos cosas son significativas, sin embargo, en esta decisión de *Cooperativa de Viviendas*. En primer lugar, que al decir que la acción debe ejercitarse "dentro del plazo señalado por el código" cita a Manresa, quien, como se reconoce en la opinión de la mayoría de este Tribunal en el caso ante nos, no postula la teoría del plazo único y defiende, por el contrario, que aparte del plazo decenal de garantía, el reclamante tiene quince años para instar su acción. Manresa, *Código Civil Español*, tomo X, vol. II, pág. 708 (ed. 1969). Esta

misma tesis es defendida por Guaroa Velázquez, *Responsabilidad por los defectos en las edificaciones*, 20 Rev. Jur. U.P.R. 13, 31 (1950).

En segundo lugar, al reconocer que cualquier propietario tiene derecho a instar acción contra el arquitecto, sin que exista nexo contractual alguno entre aquél y éste, se apartó este Tribunal de la doctrina que defiende que la acción que reconoce el primer párrafo del 1483 es *ex contractu*, lo que está acorde con la posición aquí sostenida de que es una acción *ex delicto*, basada en culpa o negligencia.

En resumen, la trilogía de *González* v. *Agostini, Géigel* v. *Mariani*, y *Cooperativa de Viviendas* v. *Villas de Navarra*, no puede citarse como autoridad en que sostener que en Puerto Rico hemos adoptado la doctrina del plazo único. Cuando más cerca, antes de ahora, ha estado este Tribunal de tener que resolver sobre el plazo para el ejercicio de la acción fue en *Bartolomei* v. *Tribunal Superior*, 98 D.P.R. 495 (1970). Se planteó en *Bartolomei* si aducía hechos una demanda por vicios de la construcción de un edificio, instada contra el contratista, en que no se alegó la fecha de la construcción, la de adquisición, ni la fecha en que se manifestaron los vicios o ruina de la construcción. Como el Art. 1483 limita la garantía del contratista a que "la ruina tuviere lugar dentro de diez años, contados desde que concluyó la construcción," resolvimos que la demanda no aducía hechos al no alegar hechos que determinaran que la ruina ocurrió dentro de los diez años de terminada la obra. Dijimos, pág. 497:

"No debe confundirse el término legal que para el ejercicio de la acción tenga el dueño del edificio arruinado, con el plazo decenal de garantías. La acción puede prescribir si no se acude en tiempo al tribunal. El otro término, el de los diez años, es uno dentro del cual debe ocurrir la ruina del edificio por vicios de construcción, para que el contratista sea responsable. Vencido dicho término sin que dentro del mismo haya ocurrido la ruina, termina la responsabilidad del contratista por los vicios de la construcción por razón de haber expirado el plazo legal de garantía. Véase, *González* v. *Agostini*, 79 D.P.R. 510 (1956)."

Para que haya causa de acción debe alegarse en alguna forma, que la ruina por vicios de la construcción ha tenido lugar dentro de los 10 años, contados desde que concluyó la construcción."

El hecho de que en *Bartolomei* se cite a *González* v. *Agostini*, como aparece en el transcrito párrafo, enerva el argumento de que *González* v. *Agostini* sostiene la teoría del plazo único. En ambos casos fue ponente el Señor Juez Pérez Pimentel. Es insostenible que *Bartolomei* y *González* v. *Agostini* sostengan posiciones encontradas.

Para concluir, la decisión que hoy adopta este Tribunal respecto al primer párrafo del Art. 1483 implica que hay un plazo único de diez años dentro del cual debe ocurrir la ruina del edificio y dentro del cual debe instarse la acción para reclamar por los daños que ello ocasione, a contar dicho plazo decenal desde la conclusión de la construcción. Quiere ello decir que si, para ejemplo, al año de concluirse y entregarse un edificio, se desploma su techo y ello ocasiona daños, el dueño y quienes sufran daños tendrían nueve años para ejercitar la acción. Por otra parte, si el desplome del techo ocurriese el mismo día que se cumple el plazo de diez años, aunque sería responsable el contratista, prácticamente sería inejercitable la causa de acción de los damnificados, pues a lo sumo tendrían horas o quizás minutos para presentar demanda judicial para reclamar por los daños. En el primer supuesto, me parece que el término sería excesivamente largo. En el segundo, sería un absurdo.

Resumo mi posición en la forma siguiente:

1. Sin necesidad de que exista el Art. 1483, el contratista y el arquitecto de una edificación responden bajo el Art. 1802 de aquellos daños que se ocasionen al arruinarse la edificación, si la ruina se debe a su culpa o negligencia; e igualmente responden si la ruina se debe a incumplimiento de sus obligaciones bajo el contrato, conforme al Art. 1054 y siguientes del Código Civil, 31 L.P.R.A. sec. 3018 y ss.

2. El Art. 1483 establece en su primer párrafo un límite a la responsabilidad *ex delicto* del contratista y del arquitecto

a partir de la conclusión de la obra, límite que consiste en el plazo decenal de garantía dentro del cual tiene que ocurrir o manifestarse la ruina; y en su segundo párrafo establece un plazo prescriptivo de quince años para el ejercicio de la acción contra el contratista si su causa se basa en incumplimiento de contrato.

3. Siendo *ex delicto* la responsabilidad del contratista y del arquitecto en el caso del primer párrafo del Art. 1483, la causa de acción por daños que allí se reconoce tiene un plazo prescriptivo de un año conforme al Art. 1868 del Código Civil. Así, si la ruina se produce, digamos a los 6 meses de concluida la obra, la acción para reclamar por daños debe instarse antes de que transcurra un año y no en cualquier momento antes de que pasen diez años.

4. El Art. 1483 establece una presunción *iuris tantum* contra el contratista y el arquitecto, teniendo éstos la obligación de probar que la ruina no se ha debido a su culpa o negligencia o que se debió a caso fortuito o fuerza mayor.

Confirmaría la sentencia recurrida.