# In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.

## MDL No. 721.

United States District Court, D. Puerto Rico.

April 26, 1988.

thier, Murphy, Sherman, McCabe & Chehardy, Metairie, La., Harvey B. Nachman, Nachman & Fernandez–Sein, Santurce, P.R., William S. Kemp, Jones, Jones, Close & Brown, Las Vegas, Nev., Jorge Ortiz–Brunet, Ortiz Toro & Ortiz–Brunet, Hato Rey, P.R., Jorge M. Suro–Ballester, Suro–Ballester, Santurce, P.R., Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, David C. Indiano, Jimenez, Graffam & Lausell, San Juan, P.R., for plaintiffs' Steering Committee.

James L. Fetterly, Gary Gordon, Fetterly & Gordon, Minneapolis, Minn., Rafael R. Vizcarrondo, Fiddler, Gonzalez & Rodriguez, San Juan, P.R., Ed Archer, Fetterly & Gordon, P.A., Hato Rey, P.R., for San Juan Dupont Plaza Corp.

Thomas G. Vaughan, Jones, Hirsch, Connors & Bull, New York City, for AIG Consultants, Inc., American Intern.

Luis E. Dubon, Jr., Dubon & Dubon, San Juan, P.R., for Alexander & Alexander of California, Inc.

Donna Gerber, Kaye, Scholer, Fierman, Hays & Handler, New York City, Arturo Diaz Angueira, Cancio, Nadal & Rivera, San Juan, P.R., for ADT Sec. Systems, Inc.

Charles A. Cordero, Cordero, Miranda & Pinto, Old San Juan, P.R., Eugene Wollan, Mound, Cotton & Wollan, New York City, for American Intern. Ins. Co. of Puerto Rico & Ins. Co. of the State of Pa.

Eduardo Castillo Blanco, Marcos Perez Cruz, Hato Rey, P.R., for Britons Carpet (USA) Ltd., Erickson Associates and Erickson Design Group, Inc.

Steven H. Schwartz, Kirtland & Packard, Los Angeles, Cal., for Rohm & Haas, Furane Co.

Ernest Roark, Vannah, Roark & Dahl, Las Vegas, Nev., for Bally Mfg.

Alfonso Miranda Cardenas, Miranda Cardenas & Cordova, Old San Juan, P.R., for Shelby–Williams, Inc.

Adrian Mercado, Rua & Mercado, Old San Juan, P.R., for Dan River, Inc.

Francisco J. Colón–Pagán, Old San Juan, P.R., for Delta Cooling Towers, Inc., Unit-

Alex Gonzalez, Gonzalez & Perez Hernandez, Old San Juan, P.R., for Toro & Ferrer.

Luis N. Blanco Matos, Federal Ligitation Div., Dept. of Justice, San Juan, P.R., for Dept. of Justice of P.R.

Francisco M. Troncoso, Member, Plaintiffs' Steering Committee, Old San Juan Station, P.R., for plaintiffs.

Peter Berkowitz, Lugo & Berkowitz, Hato Rey, P.R., Wendell H. Gauthier, Gau-

ed Refrigeration Supply, Inc., Monterey Carpets, Inc.

C.A. Chavier Stevenson, San Juan, P.R., Michael J. Black, Charles R. Tuffley, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C., Southfield, Mich., for Drexel Heritage Furnishings, Inc.

Norman C. Kleinberg, Vilia B. Hayes, Hughes, Hubbard & Reed, New York City, for Collins & Aikman Corp.

E. Vazquez Otero, Vazquez & Suarez, Hato Rey, P.R., for Central Chair Co., Columbus Blinds Corp.

Carlos E. Jiménez, Souffront & Souffront, Old San Juan, P.R., for Cone Mills Corp.

Juan A. Ramos Diaz, Cobian & Ramos, San Juan, P.R., for Erickson Associates and Erickson Design Group, Inc.

Daniel S. Reinhardt, Alan P. Shor, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for Buck Creek Industries, Inc.

Edward S. Corlett, III, David F. McIntosh, Richard J. Suarez, Corlett, Killian, Hardeman, McIntosh & Levi, P.A., Miami, Fla., for Forms & Surfaces, Inc., Maharam Fabrics, Laminating Services, Inc., K.M. Fabrics, Inc.

Jeffrey B. Storer, Ropes & Gray, Boston, Mass., for William Eberle, Ebco, Inc.

Ivan M. Fernandez, Falcon & Fernandez, Hato Rey, P.R., for Falcon Products.

Pedro J. Santa–Sánchez, O'Neill & Borges, Hato Rey, P.R., for Forms & Surfaces, Inc., Insurance Services Office, Inc., ISO Commercial Risk Services, Inc. ISO Telecommunications, Inc.

Richard J. Badolato, Connell, Foley & Geiser, Roseland, N.J., for Frankel & Associates.

David M. Stern, Stern & Miller, Santa Monica, Cal., for Grand Hotel Associates and Grand Hotel Associates Ltd. Partners.

Hector Reichard, Jr., Manuel A. Quilichini, Lasa, Escalera & Reichard, San Juan, P.R., for Honeywell, Inc., Jack Lenon Larsen, Inc., Leggett & Platt Corp., Hytex Industries, Santa Fe Extruders, Inc.

Roberto J. Matos, Hato Rey, P.R., for Forms & Surfaces, Inc., Maharam Fabrics, Laminating Services, Inc., K.M. Fabrics, Inc.

Albert Fendig, Jr., Fendig, McLemore, Taylor & Whitworth, P.C., Brunswick, Ga., for G.A. Marse Assoc., Inc.

Norberto Medina–Zurinaga, Quilichini, Oliver, et al., Hato Rey, P.R., for The Edwards Co., Inc.

Victor P. Miranda Corrada, Alex Gonzalez, Alberto Picó, Brown, Newsom & Cordova, Hato Rey, P.R., for Gilberto Ibarra Garcia, Toro & Ferrer, Thela, Inc., Reynolds Metals, Inc.

Herman Colberg, Reichard & Colberg, Old San Juan, P.R., Louis A. Lehr, Jr., Janis M. Gibbs, Arnstein, Gluck, Lehr & Milligan, Chicago, Ill., for Johnson Controls.

Edilberto Berrios Pérez, San Juan, P.R., for Martinez & Costa.

Richard Mancino, Deborah Cooper, Willkie, Farr & Gallagher, New York City, for Delta Cooling Towers, Inc., Monterey Carpets, Inc.

José Enrique Otero, Irizarry & Otero, San Juan, P.R., for Insurance Co. of North America.

Benjamin Acosta, Jr., San Juan, P.R., for La Cor Wicker.

Max L. Gillam, Milton A. Miller, Michael B. Abelson, Latham & Watkins, Los Angeles, Cal., for William Lyon.

Antonio Rossello Rentas, Old San Juan, P.R., for Lee Foam Products.

Jaime Mayol Bianchi, San Juan, P.R., for Miguel Ortiz Draperies, Inc.

Buddy W. Gregory, Gregory & Johnson, P.C., Houston, Tex., for Lerch, Bates & Assoc., Inc.

Vincente Santori Coll, San Juan, P.R., for Lamin–Art, Inc., The Ohio Mattress Co., Piedmont Corrugated Specialty, Inc.

Ramon A. Vargas, David Rive Rivera, Vargas & Rive, Hato Rey, P.R., for Milliken, Sinclair Paint Co., Western Benchcraft, Inc., Barber Colman, Diversitech, Ross & Roberts, Diversified General d/b/a Bolta Div., Reeves Bros., Inc., Western Synthetic Felt Co.

Earle C. Cooley, Louis N. Massery, Cooley, Manion, Moore & Jones, P.C., Boston, Mass., for Milliken, Sinclair Paint Co., Western Benchcraft, Inc. Barber Colman, Diversitech, Ross & Roberts, Diversified General d/b/a Bolta Div., Western Synthetic Felt Co.

José Porben Ulloa, San Juan, P.R., for National Air Corp.

Eric Tulla, Maritza I. Munich, Rivera, Tulla & Ferrer, Hato Rey, P.R., Edward A. Moss, Anderson, Moss, Russo & Cohen, P.A., Miami, Fla., for Otis Elevator Co.

Vincent Fish, Richard B. Warsk, Chase, Rotchford, Drukker & Bogust, Los Angeles, Cal., for Mitchell–Mann, Inc., 2M Design.

Hector Saldana Egozcue, Manuel I. Vallecillo, Hato Rey, P.R., for Passalacqua & CIA, Inc.

Juan A. Correa–Suarez, Ana Maria Colón–Colón, Mayra J. Serrano–Borges, Legal Div., Tourism Co., San Juan, P.R., for Tourism Co. of the Com. of Puerto Rico.

Bruce M. Allman, Paxton & Seasongood, Cincinnati, Ohio, for Shelby–Williams, Inc., Nevada Dice Co.

Antonio M. Bird, Bird & Bird, San Juan, P.R., Michael P. McKenna, Edwin L. Scherlis, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for The Sheraton Corp., Sheraton Intern., Inc.

Luis Sánchez–Betances, Sanchez–Betances & Sifre, Hato Rey, P.R., for Shelby–Williams, Inc., H.B. Fuller Co., H.B. Fuller Co. of Puerto Rico, Nevada Dice Co., Hufcor, Inc., Crain Western, Inc.

Thomas A. Graham, III, Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Ft. Lauderdale, Fla., Edgardo Rosario, San Juan, P.R., for SICO, Inc.

Miguel Cabrera, Santurce, P.R., for Teamsters Union.

John Dames, Kelley, Drye & Warren, Chicago, Ill., for Borden, Inc.

Pedro J. Varela, Hato Rey, P.R., for Teamsters Union.

J. Robert Andrews, Charles Bargiel, Mullen, McCaughey & Henzell, Santa Barbara, Cal., for Theodore H. Smyth, L & T Enterprises, Inc., Elizabeth M. Smyth Trust.

Charles F. McDevitt, Eleanore S. Baxendale, Givens, McDevitt, Pursley, Webb & Buser, Boise, Idaho, for Tertiary, Inc., Thela, Inc., Hotel Equipment Leasing Associates.

Alex González, Gonzalez & Perez Hernandez, Old San Juan, P.R., for Toro & Ferrer, Warner Burns Toan Lunde.

John Donley, David Bernick, Marjorie Press Lindblom, Kirkland & Ellis, Chicago, Ill., Juan E. Rodriguez Diaz, Hernando A. Rivera, Hato Rey, P.R., for Wilson Art.

Antonio Montalvo–Nazario, San Juan, P.R., for York Intern.

Amancio Arias Cestero, Amancio Arias Guardiola, Wilda Rodriguez Plaza, Arias Cestero & Arias Guardiola, Santurce, P.R., for Trane Export, Inc. dba Trane Western Hemisphere.

Corby D. Arnold, Corby D. Arnold, P.C., Las Vegas, Nev., for Warner Burns Toan Lunde.

Luis Gonzalez–Perez, Garcia & Gonzalez, Hato Rey, P.R., for Wolf–Gordon, Inc.

F. Castro Amy, San Juan, P.R., for W.L. Jenkins Co.

Antonio Jimenez Miranda, Harry Segarra Arroyo, Jimenez Miranda and Segarra Arroyo, San Juan, P.R., for AAA Packaging & Shipping, Co.

Ricardo Rodriguez Padilla, Old San Juan, P.R., for Aconi Constructors, Inc. a/k/a Acme Constructors Inc.

Francisco Fernández–Carbia, Hato Rey, P.R., for Glidden Industries of Puerto Rico, SCM Corp.

Arthur C. Moller, III, Kimbrell & Hamann, P.A., Miami, Fla., for J & W Wholesale Supply Co.

Ken Banks, Senior Legal Counsel, Arden Hills, Minn., for H.B. Fuller Co. and H.B. Fuller Co. of Puerto Rico.

Gail L. Kniskern, Kubicki, Bradley & Draper, Miami, Fla., for Lerch, Bates & Associates, Inc.

Hector Meléndez Cano, Doval, Munoz, Acevedo, Otero & Trias, Hato Rey, P.R.,

Carl A. Henlein, Winston E. Miller, Brown, Todd & Heyburn, Louisville, Ky., for Firestone Tire & Rubber Co., et al.

Mark O. Denehy, Richard G. Galli, Adler, Pollock & Sheehan Inc., Providence, R.I. for Carol Cable Co., Inc.

G. Jack Hardy, G. William Bissett, Preddy, Kutner, Hardy, Rubinoff, Brown & Thompson, Miami, Fla., for Carpets From London Ltd.

Leonardo Andrade–Lugo, Goldman & Antonetti, Santurce, P.R., Gary L. Bostwick, Bostwick & Ackerman, Santa Monica, Ga., for Hotel Systems Intern., Dallas Asset Management, Ltd., Dallas Asset Management, Inc., DJSDHA, Inc., Execpart S.J., Ltd., Grand Hotel, Inc., Holders Capital Corp., HCC Asset Management, Inc., Dennis Jay, Patricia L. Rahner, San Diego Hotel, Inc., San Juan Hotel, Ltd., TMS International d/b/a HSI Reservations, P. Robert Zonitch, Madison Wholesale.

Jose M. Biaggi Junquera, Mayaguez, P.R., for Universal Sec. Advisors, Inc.

Fernando Pérez Colón, Karen Ocasio Cabrera, Lespier, Munoz Noya & Ramirez, San Juan, P.R., Thomas N. Alfrey, Hall & Evans, Denver, Colo., for Mobay Corp.

J. Kenneth Griffin, Lutfy, Griffin & Goulka, Boston, Mass., for E.K. Novelty Mfg. Co., Inc.

Antonio Gnocchi Franco, Gnocchi Franco, Hato Rey, P.R., for Intern. Textiles Products, Tech–Aerofoam Products Intern.

Carl Kanowsky, Daniels, Baratta & Fine, Los Angeles, Cal., for Lewis Industries.

Carl D. Motes, Larry J. Townsend, Maguire, Voorhis & Wells, Orlando, Fla., for Sara Lee Corp. (Electrolux).

Robert Mangels, Jeffer, Mangels & Butler, Los Angeles, Cal., for San Juan Dupont Plaza Corp., San Juan Hotel Associates.

Kenneth J. Moran, McGuire, Woods, Battle & Boothe, Richmond, Va., for Reynolds Metals, Inc.

George O. Richardson, III, White & Case, New York City, for Tarkett, Inc.

Brian R. Strange, Joseph J. Sheehan, Strange & Nelson, Los Angeles, Cal., for Brian Corbell.

Joseph C. O'Bryan, Mary Elizabeth O'Bryan, O'Bryan, Darnell & O'Bryan, Louisville, Ky., Stephen Schuster, Ogden & Robertson, Louisville, Ky., for Reliance Universal, Inc.

Samuel W. Hixon, III, Sandy T. Tucker, Andrea H. Rowse, Williams, Mullen, Christian & Dobbins, Richmond, Va., for Universal Woods, Inc.

James E. Cornwell, Cornwell & Church, Toccoa, Ga., Jose Novas, Hato Rey, P.R., for Snyder Bros. Co.

Domingo Collazo Sanchez, Rio Piedras, P.R., for Commercial Plastics & Supply Corp.

Russell A. Del Toro, Roberto Santana Aparicio, Del Toro & Santana, Hato Rey, P.R., for EBCO, Inc., William D. Eberle, Tertiary, Inc., Thela, Inc., Hotel Equipment Leasing Associates.

Ernesto Rodriguez Suris, Silva Janer & Rodriguez Suris, Hato Rey, P.R., for Fernandez Gutierrez, Inc.

William C. Humphrey, Jr., Todd R. David, Alston & Bird, Atlanta, Ga., for Recticel Foam Corp.

Etienne Totti Del Valle, Dominguez & Totti, Hato Rey, P.R., for William Lyon.

Michael B. McKinnis, Phil Herzog, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for Falcon Products.

David N. Allen, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., for Reeves Bros., Inc.

Richard Bergman, Bergman & Jacobs, P.A., North Miami Beach, Fla., for Productos Quimicos Nacionales.

Ellen K. Glessner, White and Williams, Philadelphia, Pa., for Insurance Co. of North America.

Joseph W. Clark, Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for TSE Industries, Inc.

Eliezer Aldarondo Ortiz, Hato Rey, P.R., for Maria Teresa Hernandez.

Ronald L. Rosenbaum, Woods, Rosenbaum, Luckeroth, & Perez–Gonzalez, Hato Rey, P.R., for Productos Quimicos Nacionales.

Elliot G. Sagor, Squadron, Ellenoff, Plesent & Lehrer, New York City, for Day Intern. Corp., Mitchell Design.

Ralph J. Rexach, Hato Rey, P.R., for The Sheraton Corp.

W. Douglas Smith, Atlanta, Ga., for Honeywell, Inc.

## PRETRIAL ORDER NO. 69

## ORDER GRANTING DEFENDANTS TORO & FERRER'S MOTION TO DISMISS

### INTRODUCTION

ACOSTA, District Judge.

Before the Court is defendants Toro & Ferrer's motion to dismiss all claims against them as time-barred. The Plaintiffs' Steering Committee (alternatively "PSC" or "plaintiffs") filed an opposition to which defendants replied. Additionally, the Secretary of Justice of the Commonwealth of Puerto Rico has intervened in the matter because the Constitutionality of an Article of the Puerto Rico Civil Code was challenged in the PSC's opposition. *See* Rule 23.1, P.R.R.Civ.P.

The parties have different interpretations of the applicable law regarding the liability of architects for their work.[1] Defendants, architects Toro & Ferrer, argue that they are protected by the ten year statute of repose of Article 1483 of the Puerto Rico Civil Code of 1930, 31 L.P.R.A. sec. 4124 (1930). Plaintiffs counter that said period of repose does not apply to the present tort and contract case, and, alternatively, that the statute of repose violates the Equal Protection Clause because it immunizes a *class of defendants* from suit. They also attack the statute on due process grounds. In their words, the statute

arbitrarily discriminates against manufacturers, subcontractors, suppliers, retailers, materialmen and persons in actual possession or control of the improvements to real property[,]

PSC Opposition at pp. 42–43; plaintiffs add that Article 1483 violates the Due Process Clause because

[it] discriminates against *plaintiffs* who are arbitrarily deprived of the right to sue the architects and contractors, which comprise a major class of defendants.[2]

*Id.* (Emphasis added.) The Secretary of Justice, while admitting that the law on the scope of Article 1483 is not entirely clear, nevertheless submits that the challenged statute does constitutionally bar plaintiffs' claims. However, he recommends certification of these issues to the Puerto Rico Supreme Court.

Given the parties' submissions, which are thoroughly discussed below, we will, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, treat defendants' motion as simply one for summary judgment. Rule 56, Fed.R.Civ.P.; *Moody v. Town of Weymouth*, 805 F.2d 30, 31 (1st Cir.1986); *King v. William Industries, Inc.*, 565 F.Supp. 321, 323 (D.Mass.1983).

After careful consideration of the moving papers and the pertinent law, and upon review of the record in the light most favorable to plaintiffs, the Court finds as follows.

### PROCEDURAL BACKGROUND

1. On January 5, 1987 the first individual complaint related to this Multi–District Litigation was filed. *Pastoriza, et al. v. Hotel Systems International, etc.*, Civil No. 87–0006(RLA).[3] Toro & Ferrer were not named as defendants in that complaint.

2. On February 19, 1987 the first individual complaint in the above-captioned litigation naming Toro & Ferrer as defendants was filed. *Unternaehrer, et al. v. Hotel Systems International, etc., et al.*, Civil No. 87–0269(RLA).

---

1. *See* footnote 9 *infra*.

2. This statement was included in plaintiffs' equal protection argument, however, it is a perfect summary of their due process claim. *See also* footnote 30 *infra*.

3. The present litigation involves cases arising out of the New Year's Eve 1986 fire at the San Juan Dupont Plaza Hotel, which killed ninety-seven (97) people and injured over one hundred (100). *See* footnote 4 *infra*.

3. On May 13, 1987 the Multi–District Litigation Panel ordered that, pursuant to 28 U.S.C. sec. 1407, one case related to the fire at the San Juan Dupont Plaza Hotel be transferred from the Central District of California to the District of Puerto Rico for coordinated and consolidated pretrial proceedings with all cases pending in this District before the undersigned judge. Transfer Order, filed May 26, 1987, Docket No. 142A.

4. On June 26, 1987 Toro & Ferrer filed a "Motion to Dismiss," Docket No. 171A, stating that all claims against them arising from the fire at the San Juan Dupont Plaza Hotel were time-barred by Article 1483 of the Puerto Rico Civil Code, 31 L.P.R.A. sec. 4124 (1930), which precludes suits against architects and contractors filed more than ten years after completion of the structure at issue.

5. On August 10, 1987 the PSC filed their "Opposition to Motion to Dismiss," Docket No. 224A, and "Brief in Support of Opposition to Motion to Dismiss," Docket No. 224B, arguing that Article 1483 does not apply to the plaintiffs' causes of action, and, alternatively, that said article is constitutionally defective because it denies the equal protection of the laws to a class of individuals other than plaintiffs (materialmen and others involved in the construction project) and also because application of the statute to bar their claims would constitute a denial of both substantive and procedural due process of law.

6. On August 19, 1987 Toro & Ferrer filed a "Reply to Brief in Support of Opposition to Motion to Dismiss," Docket No. 235B, challenging the plaintiffs' interpretation of Article 1483 and stating that a First Circuit case, *Cournoyer v. Massachusetts Bay Trans. Auth.*, 744 F.2d 208 (1st Cir. 1984), left no doubt that the statute was constitutional.

7. On September 15, 1987 Toro & Ferrer were named as defendants in Section AA, paragraphs AA.1 through AA.8, at pages 49 through 50 of the "Master Complaint Supplementing and Amending Individual Complaints Previously Filed," Docket No. 264.

8. On October 29, 1987 the Secretary of Justice filed a document entitled "Response to [the] Constitutional Attack on the Civil Code and Request for Certification to the Supreme Court of Puerto Rico," Docket No. 476A, and supporting memorandum of law, Docket No. 476B, stating that it is clear from civil code authorities that Article 1483 applies to bar plaintiffs' causes of action but nonetheless recommending certification of the issue to the Puerto Rico Supreme Court because there is no clear precedent from that court on this matter. Additionally, the Secretary cited *Cournoyer, supra,* to defend the constitutionality of Article 1483.

9. On December 3, 1987 Toro & Ferrer were also named as defendants in section AA, paragraphs AA.1 to AA.8, at pages 64 and 65 of the "Revised Master Complaint Supplementing and Amending Individual Complaints Previously Filed," Docket No. 736.

10. On January 28, 1988 Toro & Ferrer filed a "Request for certification to the Supreme Court of Puerto Rico," Docket No. 1076, thus joining the Secretary of Justice in asking for such certification.

### FACTUAL BACKGROUND [4]

1. Osvaldo L. Toro and Miguel Ferrer have been licensed architects in Puerto Rico since 1939.

2. Osvaldo L. Toro and Miguel Ferrer practiced their profession as partners under the name of "Toro & Ferrer, Arquitectos" ("Toro & Ferrer").[5]

---

**4.** These facts were stated in the joint affidavit of Osvaldo L. Toro and Miguel Ferrer attached to their motion to dismiss. In their opposition, plaintiffs did not challenge any of the facts set forth in the affidavit, rather, they attacked defendants' denial of liability by including a long description of what they allege occurred at the hotel at the time of the fire. PSC Opposition at pp. 2–15. Still, the facts in the affidavit remain uncontroverted.

**5.** The PSC describes Toro & Ferrer as a corporation in paragraph AA.1 of the Amended Master Complaint. However, this appears to be a misnomer because Osvaldo L. Toro and Miguel Ferrer as architects could not practice their profession through a corporation. *Rasa Eng. Corp.*

3. The professional partnership lasted from December 1945 to June 1986.[6]

4. Some time between 1958 and 1959, a group of investors formed Enterprise Hotel Development Corporation ("Enterprise") for the purpose of building a large ocean-front tourist hotel off Ashford Avenue in the Condado area of Santurce, Puerto Rico.

5. Enterprise entered into a hotel management contract with the Sheraton Corporation.

6. At about this time, Toro & Ferrer were retained to prepare preliminary designs and drawings for the building now known as the San Juan Dupont Plaza Hotel ("the hotel").

7. Toro & Ferrer, with the assistance of Warner Burns Toan Lunde (a New York City architectural firm) prepared the designs and drawings for the first phase of construction (the hotel's foundations) in March of 1961.

8. Construction of the foundations was completed four (4) months later, in July of 1961.

9. Toro & Ferrer prepared the designs and drawings for the second phase of construction (the hotel's building structure) in October of 1961.

10. After the foundation plans were approved by Enterprise and by the concerned local and federal agencies, and after competitive bidding, the general construction contract was awarded to R.P. Farnsworth Co.

11. As architects of record, Toro & Ferrer were contractually obliged to supervise the construction of the hotel to ensure that the work conformed to the provisions of their design plans.

12. Passalacqua y Compañía was employed by Enterprise as Project Manager to provide full time supervision inspection of the construction work.

13. Construction of the hotel building was finished in September of 1963.

14. Upon request by Enterprise Development, Osvaldo L. Toro prepared a "Certificate of Construction Completion and Construction Costs" on October 3, 1963.

15. The hotel started operations under the name of Puerto Rico Sheraton on October 4, 1963.

16. Between the period immediately after the hotel started operations (October 4, 1963) and 1965, Toro & Ferrer provided architectural services to the hotel's operator (Sheraton). The work involved design changes to meet previously unforseen operational needs which, though desirable, were not essential for operation of the hotel.

17. Toro & Ferrer had no professional relationship with the hotel after 1965.

18. On December 31, 1986, the fire that gave rise to this litigation severely damaged the San Juan Dupont Plaza Hotel killing ninety-seven (97) persons and injuring over one-hundred (100).

## DISCUSSION

### A. THE SUMMARY JUDGMENT STANDARD

Toro & Ferrer's motion must be treated as one for summary judgment under the

---

*v. Daubón*, 86 D.P.R. 193, 196–97 (1962) (Corporations may not practice professions such as architecture or engineering, only individuals who are properly admitted to such professions may do so.); *see also* Op. Sec. Just. No. 8 (1980). However, architects may practice through a professional partnership, *see* Civil Code Article 1569, 31 L.P.R.A. sec. 4324 (1930); *Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33, 43, 12 P.R. S.Ct. Off. Trans. 41, 53 (1982), which is apparently what Osvaldo L. Toro and Miguel Ferrer did. Nevertheless, the individual partners would be personally liable if the suit against them were to prosper. Civil Code Articles 1588 and 1589, 31 L.P.R.A. secs. 4371 and 4372 (1930); *Asociación de Propietarios, supra,*

112 D.P.R. at 49 (Members of a professional partnership are personally jointly and severally liable for the debts, including those in tort, incurred by the partnership which exceed the partnership's assets). Therefore, this motion to dismiss applies to the partnership itself and to Osvaldo L. Toro and Miguel Ferrer in their personal capacity. References to the partners or to the partnership will be used interchangeably.

**6.** Although they still perform some uncompensated architectural work, Osvaldo L. Toro and Miguel Ferrer, who are both 72 years-old, are now retired.

Federal Rules of Civil Procedure. Specifically, Rule 12(b) states:

> * * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, * * *

Submitted with Toro & Ferrer's Motion to Dismiss was the joint affidavit of Osvaldo L. Toro and Miguel Ferrer. Plaintiffs' opposition included their detailed version of what happened at the Dupont Plaza Hotel on the afternoon of December 31, 1986. Plaintiffs did not contest the factual statements in the architects' affidavit (they do, of course, contest their denial of liability). Both parties have thus availed themselves of the opportunity to address the facts. Therefore, we treat the instant motion as one for summary judgment pursuant to Fed.R.Civ.P. Rule 56(b) (defending party moving for summary judgment). *See Moody, supra*, 805 F.2d 30; *King, supra*, 565 F.Supp. at 322–323.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986), the Supreme Court of the United States held that:

> * * * the plain language of Rule 56(c) [Fed.R.Civ.P.] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial * * *.

*See also U.S. Fire Insurance Co. v. Productions Padosa, Inc.*, 835 F.2d 950 (1st Cir.1987). Additionally, "the purpose of summary judgment is not to explore all the factual ramifications of the case, but to determine whether such exploration is necessary," *Briggs v. Kerrigan*, 431 F.2d 967, 968 (1st Cir.1970); therefore, the party opposing summary judgment "may not rest upon mere allegations or denials of his pleading, but his response * * * must set forth specific facts showing that there is an issue for trial." Rule 56(e), Fed.R.Civ.P.; *Over the Road Drivers, Inc. v. Transport Ins. Co.*, 637 F.2d 816 (1st Cir.1980).

The disaster at the San Juan Dupont Plaza Hotel occurred on December 31, 1986 the first individual lawsuit and both master complaints in this litigation were filed in 1987, more than 23 years after the hotel started to operate and 21 years after Toro & Ferrer ended all professional ties to the hotel. Defendants argue that the ten year period of Article 1483 lapsed in October of 1973 (ten years after the hotel began to operate). Plaintiffs, while arguing that Article 1483 does not apply to this case at all, nevertheless submit the alternative view that, if it applied, the ten-year period lapsed in 1975 (ten years after all professional relations between Toro & Ferrer and the hotel ended). PSC Opposition at 70.

Rule 56(c) requires that there be no *genuine* issue of *material* fact before summary judgment may be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Whether the ten year period ended in 1973 or in 1975 is not a material fact, since plaintiffs' claims were filed in 1987. Thus, even when we view the record in the light most favorable to plaintiffs, *see Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), and accept their time frames, plaintiffs' claims still came 12 years after the ten year period expired.[7]

---

7. We would note, however, that the period probably expired at least on October 4, 1973 (10 years after the hotel began to operate). The hotel building must have been completed when it began operations, and the article clearly states that the ten years begin to run when the build-

ing is completed. 31 L.P.R.A. sec. 4124. However, it may be possible for the architects to be liable for additions and modifications made to the building between 1963 and 1965 because these occurred *after* the building was completed. *Cf. Acevedo Hernández v. CRUV*, 110 D.P.R.

## B. THE ISSUE

The only material issue for our consideration is whether or not Article 1483 bars plaintiffs' claims. If it does, then defendants are entitled to judgment in their favor as a matter of law. As a threshold matter, however, we must determine the propriety of the Secretary's and defendants' certification requests.

## C. CERTIFICATION TO THE PUERTO RICO SUPREME COURT

### 1. Certification Requirements

■ The Secretary of Justice has moved us to certify to the Puerto Rico Supreme Court the questions about Article 1483 raised herein. Defendants have also moved for certification. These requests are grounded on the assertion that there is no binding precedent of Puerto Rico law stating that the *plazo decenal* (ten year period) of Article 1483 of the Puerto Civil Code, 31 L.P.R.A. sec. 4124 (1930), protects architects against actions by "third parties," i.e., those not in privity of contract with the architects.

The Supreme Court of Puerto Rico has established the following prerequisites for accepting certified questions of Puerto Rico law from this court:

(1) questions of Puerto Rican law [must] be involved; (2) said questions may determine * * * the outcome of the case;

(3) there are no clear precedents in the case law of the Puerto Rico Supreme Court; (4) an account of all the facts relevant to said questions be included, clearly showing the nature of the controversy in which the questions arise.

*Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780, 788, 12 P.R. S.Ct. Off. Trans. 983, 993 (1982).

The first element is clearly met in the present case since the question presented deals substantively with several articles [8] of the Puerto Rico Civil Code (Title 31 of L.P.R.A., hereinafter "Civil Code"). Additionally, were we to rule in favor of defendants, there is no question that a decision on this matter would be dispositive of the instant complaint against them. However, the third prerequisite is not present in this case. As the discussion of the merits below will show, although there is no Puerto Rico Supreme Court opinion which fits the facts of this case perfectly, there is sufficient case law (*juris-prudencia*) from which we can infer how that court would rule on this matter.[9] Therefore, certification of questions of the scope of articles of the Puerto Rico Civil Code herein is not necessary. *Venezia v. Miller Brewing Co.*, 626 F.2d 188, 192, n. 5 (1st Cir.1980) ("The certification procedure was not designed so as to allow a party 'to seek to persuade the state court to change what appears to be present law' ") *citing Cant-*

---

655 (1981). Nevertheless, further analysis of this question would serve no practical purpose because plaintiffs concede that the ten year period as to *any* work done by Toro & Ferrer for the hotel ended in 1975.

**8.** All civil codes are divided into "articles" not "sections." "Titles" are likewise not used, rather the Code is divided into "parts" and "chapters." However, when the Laws of Puerto Rico were compiled in a single collection the editor followed the American system of "Titles" and "sections."

**9.** Because our diversity jurisdiction has been invoked, we have a duty to apply local law. Rules of Decisions Act, 28 U.S.C. sec. 1652 (1982) *and Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In carrying out this duty we generally must resolve questions of local law which are dispositive of the case, *see Meredith v. Winter Haven,* 320 U.S.

228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943), unless we determine that the abstention doctrine applies, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). When there is no local case law directly on point, we can predict how the local courts would decide the matter if faced with a similar case. *See Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) ("As long as there is diversity jurisdiction, 'estimates' are necessarily often all that federal courts can make in ascertaining what the state court would rule to be its law") (Frankfurter, J. concurring); *Nolan v. Transocean Air Lines,* 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961) (per curiam); *Turcotte v. Ford Motor Company,* 494 F.2d 173, 179, n. 7 (1st Cir.1974) (District court not precluded from determining how state court *would* rule if faced with same legal question); *but cf.* Note, *"Prediction by Federal Courts—A Self–Fulfilling Prophecy? Saloomey v. Jeppesen & Co.,"* 17 *Conn.L.Rev.* 415, 418–423 (1985).

*well v. University of Massachusetts*, 551 F.2d 879, 880 (1st Cir.1977).

The Civil Code commentators (*tratadistas*), a very important source of Puerto Rico law, have also helped us approach the issue assuredly without need for the certification procedure.

### 2. The Civil Law Legal Method

*Derecho Puertorriqueño* (Puerto Rico law) is the result of the long coexistence of both the Spanish Civil Code and American common law systems. Puerto Rico's mixed jurisdiction is one of the few still fully active in the world. Through the years of association with the United States, the common law has heavily influenced local legislation, judicial opinions and legal commentary. However, the Puerto Rico Civil Code is still the basic source of law in many areas including tort law. In fact, the Civil Code itself is the mandatory starting point in the analysis of Puerto Rico tort law. *Valle v. Ame. Inter. Ins. Co.*, 108 D.P.R. 692, 695, 8 P.R. S.Ct. Off. Trans. 735, 736 (1979) (In overruling all prior tort law cases based exclusively on common law precedent, the Supreme Court stated: "Nowadays, it seems unnecessary to reiterate that, in Puerto Rico, the law on the field of damages is governed—both in form and in substance—by the civil law system.") *cited as controlling in Santiago v. Group Brasil, Inc.*, 830 F.2d 413, 415 (1st Cir.1987) (Products liability case). The application of the Civil Code made mandatory by *Valle* requires courts to follow analogous civil codes and their related commentaries, and,

in analyzing the law, the courts must follow the civilian[10] method for determining the current state of the law. *See Gen. Office Prods. v. A.M. Capen's Sons*, 115 D.P.R. 553 (1984) (Refusing to apply Louisiana court's interpretation of civil code statute because that court had not analyzed civilian authorities, and going on to decide the matter by referring to traditional civilian sources).[11]

The civil law system has three sources of law: (1) written law (*ley*); (2) the work of *tratadistas* (*doctrina*); and (3) judicial opinions (*jurisprudencia*). *Tratadistas* (which literally translated means "treatise writers") are scholars who author detailed commentaries on the Civil Code, just like those scholars who analyze the common law. However, in the civil code system, the *doctrina* is an essential tool for interpretation of the law which may even be more influential than a court decision because the civilians rely more on the *doctrina* than on the case law and traditionally have not followed the doctrine of *stare decisis*.[12] *See, e.g., Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33, 49, 12 P.R. S.Ct. Off. Trans. 41, 60 (1982) (Overruling an earlier decision in large part because it espoused a minority view widely criticized by the Spanish *doctrina*, which "is the main source of [Puerto Rico's] civil law system"). In effect the *degree* of reliance upon the doctrinal commentaries by the civilians places the *tratadistas* much higher than the "secondary" authority status of common law commentaries.[13] There-

---

**10.** In this opinion the term "civilian" is used to refer to civil code legal systems or to persons "who are skilled or versed in the civil law." Black's Law Dictionary, 5th ed., p. 223.

**11.** The matter now before us is a perfect example of what the *Valle* court intended. The question presented is one of the applicability of a Civil Code article. The parties have extensively briefed the matter on the basis of interpretations of those articles by the Puerto Rico Supreme Court and on the *tratadistas'* analysis thereof. Lastly, the parties do make reference by way of comparative analysis to the statutes of repose of several American states.

**12.** "When a lawyer in a 'civil law' country has a legal problem which is not definitely settled by

statute he may be satisfied to solve it without reference to decisions, but never without the literature." Mose, *"International Legal Practice,"* 4 *Fordh.L.Rev.* 244, 236 (1935) *cited in* R. Schlesinger, *Comparative Law*, Foundation Press, p. 594, n. 7 (1980) (This book gives a more detailed analysis of the civilians' approach to legal authority at pages 594 to 602).

**13.** While the emphasis on the doctrine is an essential part of civilian tradition, some commentators have suggested that there may also be a practical reason for this continued emphasis. The civil code jurisdictions, unlike the common law countries, have not developed sophisticated case reporting systems and, consequently, the civilians tend to rely more on the well-written and easily available collections by the *tratadis-*

fore, although the final determination as to the application of the Civil Code is up to the Puerto Rico Supreme Court, the commentaries provide a very strong indication of how that court would rule when faced with the issue.[14]

Since we have enough guidance in ascertaining the current state of applicable Puerto Rico law, certification is not needed.[15] Therefore, the motions requesting certification to the Puerto Rico Supreme Court are hereby DENIED.

## D. THE PLAZO DECENAL: PUERTO RICO CIVIL CODE ART. 1483

### 1. Introduction

As discussed above, the basic statute on tort liability in Puerto Rico is Article 1802 of the Civil Code,[16] however, there is an article which specifically addresses liability for damages caused when a building is destroyed. This statute, Article 1807 of the Civil Code, states

> The owner of a building is liable for damages which may result from the collapse of the whole or a part thereof, if it

should occur through the absence of the necessary repairs.

31 L.P.R.A. sec. 5146 (1930). Architects may also be liable for such "collapse" (*ruina* in Spanish).[17] Article 1809 states:

> Should the damages referred to in the two preceding sections [Articles 1807 and 1808, 31 L.P.R.A. secs. 5146, 5147] arise from defects in construction, the *third person* who suffers it may only claim damages of the *architect*, or, in a proper case, of the constructor [sic, builder or contractor],[18] *within the legal period*.

31 L.P.R.A. sec. 5147 (1930) (emphasis added).

### 2. The Issue

■ The seminal question in our analysis of Article 1809 is: What is the "legal period" applicable to our case pursuant to Article 1809? It has to be either one year from the date the damage was discovered, i.e., December 31, 1987, or ten years from the date the building was finished, i.e., on or before 1975.[19] Obviously, if it is the former, then plaintiffs' claims are viable but if it is the latter, they are barred.

---

*tas* than on the poorly reported case law. In fact, the only record of many important judicial opinions in civil code countries is their discussion by *tratadistas*. *See generally* Schlesinger, *Comparative Law, supra,* at pp. 599–602.

**14.** Naturally, reference to the *tratadistas* cannot be used by this District Court to overrule the clear precedent in the opinions of the Puerto Rico Supreme Court. Rather, the commentaries provide guidance to District Courts in cases such as this one where the definitive word by the Supreme Court is lacking.

**15.** We also note that certification of the question of the constitutionality of the relevant Civil Code Article would probably not be accepted by the Puerto Rico high court because similar provisions of the United States and Puerto Rico Constitutions are concerned. *See Pan Ame. Comp. Corp., supra,* 112 D.P.R. 780, 12 P.R. S.Ct. Off. Trans. 983, (Refusing to accept certified questions as to constitutionality of statute because both Commonwealth and federal constitutions had similar provisions and Federal District Court retained power to rule on the matter under U.S. Constitution). *See also Cuesnongle v. Ramos,* 835 F.2d 1486 (1st Cir.1987) (discussing the Puerto Rico Supreme Court's refusal, in *Cuesnongle v. Ramos,* — D.P.R. —, 87 JTS 77 (June 30, 1987), to answer certified questions of arguably parallel constitutional provisions.)

**16.** In relevant part, Article 1802 reads as follows:

> A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. * * *

31 L.P.R.A. sec. 5141 (1930).

**17.** *Ruina* is a very broad concept which includes: (1) the complete collapse of the structure (*ruina total*); (2) defects which endanger, though not completely destroy, the entire structure or which completely destroy an essential part of it (*ruina parcial*); and (3) defects which make the structure or an essential part of it unsuitable for its intended use (*ruina funcional*). *Maldonado Pérez v. Las Vegas Dev.,* 111 D.P.R. 573, 574–575 (1981).

**18.** Throughout this opinion we will refer to and cite from the English version of Puerto Rico laws found in Laws of Puerto Rico Annotated ("L.P.R.A."). However, as we are dealing with the Puerto Rico Civil Code which was originally drafted in Spanish, we are bound by the Spanish text (found in *Leyes de Puerto Rico Anotadas,* also "L.P.R.A.") wherever we find the English translation of the original Spanish text to be incorrect. *See* Civil Code Article 13, 31 L.P.R.A. sec. 13 (1930).

**19.** *But see* footnote 7 *supra.*

### 3. The Law

Plaintiffs argue that the "discovery rule" statute of limitations (i.e., that the one year statute of limitations for tort actions starts to run from the time the damage was or should reasonably have been discovered) of Article 1868 applies. In relevant part, Article 1868 reads as follows:

> The following prescribe in one year:
>
> \*   \*   \*   \*   \*   \*
>
> 2. Actions to demand civil liability for grave insults [sic, wrongs] or calumny [sic, slander], *and for obligations arising from the fault or negligence mentioned in section 5141 of this title, from the time the aggrieved person had knowledge thereof.*

31 L.P.R.A. sec. 5298 (1930) (emphasis added). In contrast, defendants argue that the "legal period" referred to in Article 1809 is the *plazo decenal* or ten year period of Civil Code Article 1483 which reads as follows:

> The contractor of a building which may have been destroyed by reason of defects in the construction shall be liable for the losses and damages *if said building should collapse within ten years, to be counted from the completion of the construction; and during the same time the liability shall be incurred by the architect who may have directed the work if the collapse is due to defects in the ground or in the direction.*
>
> If the cause [of the collapse] should be the noncompliance of the contractor with the conditions of the contract, the action for indemnity may be brought within fifteen years.

31 L.P.R.A. sec. 4124 (1930).

### 4. The Rationale for the Law

The *plazo decenal* of Article 1483 is not unique to Puerto Rico or its civilian model Spain, other civil code jurisdictions have similar statutes.[20] Many American States also have such laws and they are known as "statutes of repose."[21] There is one important difference however between the statutes of repose and civil code articles like the *plazo decenal.* The statutes of repose merely impose a time limitation to the *general* liability of architects, whereas the civil code articles are both a source of specific liability as well as a time limitation on that liability.

The *plazo decenal* imposes *heavier* liability upon the architect and contractor than it does on any other class of participants in a construction project so long as the *ruina* occurs within the ten year period.[22] This liability is known as *responsabilidad decenal* (literally translated, "ten year liability"). In *Géigel v. Mariani,* 85 D.P.R. 46 (1962), the Puerto Rico Supreme Court held that Article 1483 creates a presumption of negligence on the part of the architect when the building collapses within the ten year period. The architect bears the burden of rebutting that presumption of negligence. *Id.* The *Géigel* court stated that the rationale for imposing the *responsabilidad decenal* upon the architect and contractor was their professional status and the fact that they controlled the job site. Nevertheless, the responsibility is limited to a ten-year period because "of a desire for fixing the exact moment when the liability expires, thus avoiding the complaints that could arise long after completion and delivery of the job site about the specific source of the alleged damage." *Rivera, supra,* 107 D.P.R. at 388 (translation ours). In other words, it was felt that the *responsabilidad decenal* was so harsh that some limitation on the length of exposure to it was necessary.

Because this *responsabilidad decenal* encompasses liability of an architect for construction defects under contract as well

---

**20.** Among others: France; Italy; Portugal; Switzerland; Germany; Bolivia; Brazil; Chile; Costa Rica; Morocco; and Russia. *Rivera v. Las Vegas Dev. Corp.,* 107 D.P.R. 384 (1978).

**21.** *Rivera, supra,* 107 D.P.R. 384. *See also Cournoyer, supra,* 744 F.2d 208, and cases cited therein.

**22.** For example, materialmen and workmen are not bound by this type of liability. *Carreras v. González Santos,* 111 D.P.R. 819, 822 (1981).

as tort law, *see Roselló Cruz v. García,* 116 D.P.R. 511 (1985) (Architects sued in tort (*daños y perjuicios ex delicto*) by the owner of the structure subject to the presumption of negligence and to *responsabilidad decenal* under article 1483), the *plazo decenal* applies not only to the specific source of liability created by Article 1483 and similar laws, but also to the more general liability statutes such as Articles 1802 and 1809 of the Civil Code, 31 L.P.R.A. secs. 5141 and 5147.

### 5. The Effect of the Limitations Period

The ten year period is also a *plazo de caducidad:* it is not a prescriptive period (a statute of limitations) which constitutes an affirmative defense, rather it is a jurisdictional period, that is, the claim does not exist in the eyes of the law once the ten years have passed. A court of law has no flexibility to hear such time-barred claims.[23] In fact, this period is so strict that contracts shortening or lengthening the architect's liability period are unenforceable because they violate public policy. *Federal Ins. Co. v. Dresser Ind., Inc.,* 111 D.P.R. 96, 106–107 (1981).

Additionally, in *Rivera, supra,* 107 D.P.R. 384, the Puerto Rico Supreme Court ruled that the *plazo decenal* is a *plazo único,* that is, a single time period within which the *ruina* must occur and a suit instituted. Otherwise, architects and contractors are not amenable to suit. However, justice Irizarry–Yunqué, joined by Justice Negrón–Garcia, disagreed with the majority's opinion that the ten year period was *both* for the *ruina* to occur *and* for suit to be brought. Irizarry–Yunqué, favoring a stacking approach, would have

ruled that while the *ruina* must occur within the ten year period, the appropriate prescriptive period (either Article 1868 or Article 1864, 31 L.P.R.A. secs. 5294, 5298 (1930)) would then start to run from the date of the *ruina.* Writing for the majority, Chief Justice Trias–Monge, while noting that most modern civil codes include a period for the *ruina* to occur, another for the injured party extrajudicially to complain of the damage, and yet another for bringing suit, concluded that the Puerto Rico Civil Code is an old and firmly established one, and that the clear wording of Article 1483 must be interpreted to be a single period both for the *ruina* to occur and for suit to be commenced. *Id.,* 107 D.P.R. at 389. Any changes, the Chief Justice noted, must be left to the legislature. *Id.,* 107 D.P.R. at 390. Thus, the architect is subject to the ten year liability only if the *ruina* occurs and suit is filed within the *plazo decenal.*

### 6. The Question of Law in the Present Case

The question now is: To whom is the architect liable during the pendency of the *plazo decenal?* Specifically, are third parties, such as plaintiffs here who lack a contractual relationship with the architect, nonetheless bound by the ten year rule of Article 1483? Third parties benefit from Article 1483's imposition of *responsabilidad decenal* upon the architects and are also bound by the *plazo decenal's* time limitation thereon. That is the conclusion of the Spanish *tratadistas* regarding Article 1591 of the Spanish Civil Code from which Puerto Rico's Article 1483 was copied.[24] As defendants pointed out in their

---

**23.** As to the distinction between prescriptive periods and *plazos de caducidad, see generally Industrial Equip. Corp. v. Builders Ins. Co.,* 108 D.P.R. 290 (1979).

**24.** *See* II–3 Puig–Brutau, *Fundamentos de Derecho Civil,* pp. 126–127 (1983) (The unanimous view of the *tratadistas* is that the *plazo decenal* is the legal period of article 1809); J. Cadarso–Palau, *La Responsabilidad Decenal de Arquitectos y Constructores,* Montecorvo, p. 333 (1976); II–2 Albaladejo, *Derecho Civil,* p. 441 (1975); 31 Scaevola, *Código Civil,* p. 617 (1974); 12 Manresa, *Código Civil Español,* p. 697 (1951); *compare* Santos–Briz, "*El Contrato de Ejecucion de Obra*

*y su Problemática Jurídica,*" Revista de Derecho Privado, May 1972 (Despite absence of express reference thereto, the *tiempo legal* of Article 1.909 (Puerto Rico's 1809) is the *plazo decenal* of Article 1.591 (Puerto Rico's 1483)) *with* IV Santos–Briz, *Derecho Civil,* pp. 394–97 (1973). *But see* Guaroa Velazquez, *Responsabilidad por los Defectos en las Edificaciones,* 20 *Rev.Jur.U.P.R.* 13, 32–34 (1950) (In this article, this local commentator, heavily cited in plaintiffs' opposition, recognized that the Spanish *doctrina* favored the notion that the *plazo decenal* applied to the Spanish code's equivalent of Puerto Rico Article

reply brief, the difference of opinion among *tratadistas* alluded to by plaintiffs in their opposition is limited to the same disagreement between the majority and dissenting opinions in the *Rivera* case, that is, whether, on the one hand, both the *ruina and* the filing of the lawsuit must occur within the *plazo decenal* or, on the other hand, there is a ten year period for the *ruina* to occur and a one year period to file suit.[25] The dissenting view that so long as the *ruina* occurs within ten years from completion of the structure, suit may be instituted within the appropriate prescriptive period, would in any case not help plaintiffs since the *plazo decenal* had obviously expired when the December 31, 1986 tragedy at the hotel occurred.[26] Thus we are left with the majority opinion of the *tratadistas* that the *plazo decenal* is the "legal period" of Article 1809 and therefore the architects' potential liability was extinguished as of 1975.

Moreover, we have some *express* indication from the Puerto Rico Supreme Court as to how it would rule on this question.[27] In *The Powerlite of P.R. v. C.R.U.V.*, 115 D.P.R. 654 (1984), the contractor sued the owner of the work site to recover damages caused by the latter's allegedly tortious refusal to permit the contractor to finish the job. The question presented was whether or not defendant was within its rights when it prevented the contractor from finishing the job. The Puerto Rico Supreme Court stated that its "main task in [deciding] the case [was] to describe the liability of the architect for defective plans or ground defects and the duties of the contractor when this occurs." *Id.*, 115 D.P.R. at 657 (translation ours). In order to decide the matter, the court ruled that although that case was not technically an *acción decenal* (i.e., a suit alleging *responsabilidad decenal*), the duties owed by the

contractor to the defendant-owner were nonetheless defined by the *responsabilidad decenal* imposed by Article 1483. Specifically, the Court noted that a contractor has a duty under Article 1483 to refuse to build the structure when it is obvious that the ground cannot support it, and that its failure to do so entitled the owner to terminate the contract when its independent inspection showed that the work did not meet the contract standards. *Id.*, 115 D.P.R. at 658. As part of its careful interpretation of Article 1483, the court wrote

> [w]hat this article means is, basically, that the architect is liable *to a third party* for *ruina* caused by defects in the ground[28] and in the supervision.

*Id.*, 115 D.P.R. at 657 (emphasis added, translation ours). The court, however, did not tie this statement to the specific facts of the case, yet it was made part of an opinion which itself thoroughly analyzed the scope of Article 1483. Therefore, this statement, accompanied by the same court's previous interpretations of the *plazo decenal* as a single period, and the commentaries, leads us to conclude that the court meant exactly what it said, i.e., that Article 1483 bars suits by third parties when the *ruina* has occurred outside the ten year period.

We thus conclude that causes of action by third parties against architects pursuant to Article 1809 must be brought within ten years of the end of construction. That is because the "legal period" referred to in Article 1809 is the *plazo decenal* of Article 1483.

## E. CONSTITUTIONALITY OF THE "PLAZO DECENAL"

The PSC attacks the constitutionality of Article 1483 on equal protection and due

---

1809, but nonetheless criticized that notion and argued that the discovery rule should apply).

**25.** This conflict was thoroughly discussed by the Puerto Rico court in *Rivera, supra,* 107 D.P.R. at 385–387.

**26.** *See* footnote 7 *supra,* and accompanying text.

**27.** *See* footnote 9 *supra.*

**28.** The Puerto Rico Supreme Court has explained that there is no such thing as inherently "defective ground," but rather this term is used to describe the relative capacity of the soil to support certain structures. *Roselló Cruz, supra,* 116 D.P.R. at 517 *citing* Cadarso–Palau, *La Responsabilidad Decenal, supra,* at 277.

process grounds.[29]

### 1. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike. * * * [T]he courts have * * * devised standards for determining the validity of state legislation * * * that is challenged as denying equal protection. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.

*Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439–440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citations omitted).

■ Before we reach the merits of plaintiffs' equal protection claim, we must examine the threshold question of whether or not they have standing to challenge the statute on this constitutional ground. *See Warth v. Seldin,* 422 U.S. 490, 498–499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (The court must determine "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." citations omitted and emphasis in the original).

Plaintiffs do not have standing to argue that Article 1483 classifies architects and contractors preferentially over other classes of potential defendants [30] because such an argument merely attempts to assert the constitutional rights of third parties. *Warth, supra,* 422 U.S. at 499, 95 S.Ct. at 2205 (Plaintiff "cannot rest his claims to relief on the legal rights or inter-

ests of third parties"); *see also Camel Hair and Cashmere v. Associated Dry Goods,* 799 F.2d 6 (1st Cir.1986). Furthermore, plaintiffs have no common interest with the class of defendants allegedly discriminated against in Article 1483 that would allow them to institute a constitutional attack. *Britt v. Schindler Elevator Co.,* 637 F.Supp. 734, 736–737 (D.D.C.1986) (Holding that plaintiff lacked standing to challenge District of Columbia statute of repose on equal protection grounds); *but cf. Shibuya v. Architects Hawaii Ltd.,* 65 Hawaii 26, 647 P.2d 276, 282 (1982) (Plaintiffs had standing to challenge statute of repose because it injured them by depriving them of a cause of action). Therefore, plaintiffs lack standing to challenge Article 1483 on equal protection grounds.

Nevertheless, even if plaintiffs had standing to raise the issue, their equal protection challenge must fail on the merits.

■ Plaintiffs in this case base their equal protection attack strictly on the classifications that are made by Article 1483, that is, architects and contractors who are protected by the *plazo decenal,* as compared to other persons involved in a construction project, such as materialmen and workers, who are not protected. *See* PSC Opposition at 41. Because these classifications are neither suspect nor quasi-suspect, we must apply the rational basis standard. *Cleburne, supra,* 473 U.S. at 440–442, 105 S.Ct. at 3258 (Race, alienage, and national origin are suspect classifications calling for strict scrutiny of the statute in question. Gender and illegitimacy are quasi-suspect classifications and subject the statute to heightened, albeit not strict, scrutiny. However, where neither a suspect, nor a quasi-suspect classification is involved, lowest scrutiny applies). In *Cournoyer, supra,* 744 F.2d 208, our Court of Appeals

---

**29.** Like any other jurisdiction within the United States, the Commonwealth of "Puerto Rico is subject to the constitutional guarantees of due process and equal protection of the laws." *Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 7, 102 S.Ct. 2194, 2198, 72 L.Ed.2d 628 (1982).

**30.** *See* PSC Opposition at pp. 41–42. They also argue, as they do in their due process challenge, that they are injured by this classification be-

cause they may not sue a potential class of defendants, but go on to base their equal protection attack strictly on the argument that Article 1483 discriminates against different classes of defendants. *Id.* The argument that plaintiffs are discriminated against because they may not sue a potential type of defendant is discussed below in the due process section of this opinion.

ruled that the Massachusetts statute of repose, which barred suits against architects filed six years after completion of the structure, was not constitutionally deficient. The Circuit Court described the applicable standard as requiring the court to

> decide only that "the legislature '*could* have concluded rationally' that the discrimination [between classes of defendants] was justifiable and '*could* rationally have distinguished' between the classifications under attack."

744 F.2d at 212 (emphasis and inserts in the original). Therefore, we are merely required to determine whether or not the challenged statute bears a rational relationship to a legitimate state goal.

The PSC's argument that architects and contractors are *favored* over materialmen and other participants in a construction project is incorrect. The *plazo decenal* imposes *heavier* liability upon the architect and contractor than it does on any other class of participants in a construction project so long as the *ruina* occurs within the ten years. Additionally, it is important to remember that *Géigel, supra*, 85 D.P.R. 46, establishes that Article 1483 creates a presumption of negligence on the part of the architect when the *ruina* occurs within the ten year period. One Spanish commentator has summarized the rationale for the *plazo decenal* as follows:

> * * *, it must be noted that a certain margin of arbitrariness is inevitable when fixing any limitations period, be it a prescriptive period, or a jurisdictional one. This is the position of the French doctrine [French *tratadista* ] Cantelaube, [for example], states that the ten year limitation on the warranty that may be demanded of architects and contractors appears to be, * * * equitable. 'A shorter warranty period,' he writes, 'would not have been long enough for all defects to become apparent [because] a period of appropriate length is required for the

soundness and good working condition of the structure to be manifest. A longer period of time would be useless [because] once ten years have gone by, the structure's defects are more often than not caused by aging of the structure or by the negligence and misuse of it by the owner.'

Cadarso–Palau, *La Responsabilidad Decenal, supra,* at 345 (footnote omitted, our translation). As discussed above, the rationale for imposing the *responsabilidad decenal* upon the architect and contractor was their professional status and the fact that they controlled the job site. Nevertheless, the responsibility is limited to a ten-year period because "of a desire for fixing the exact moment when the liability expires, thus avoiding the complaints that could arise long after completion and delivery of the job ˙site about the specific source of the alleged damage." *Rivera,* 107 D.P. R. at 388 (translation ours). This reflects the general legislative policy of avoiding stale claims,[31] but also, as we indicated above, it was felt that the *responsabilidad decenal* was so harsh that some time limitation was necessary in order to provide a clear indication of the end of the liability. This is also an incentive to architects to fully practice their profession and to be innovative in their work, which contributes to much needed housing construction in the densely populated jurisdiction that is Puerto Rico. Additionally, the legislature probably considered that the architect loses control of the job site to the owner once construction is completed and it is up to the owner to discover and repair defects once sufficient time has passed from completion of construction. It is not irrational, then, to limit this liability to a fixed period of time.

As we have seen, the *estatuto decenal* (statute imposing *responsabilidad decenal* ) is intended to help individuals who sue architects and contractors for alleged

---

**31.** See also *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822, 826 (Colo.1982) ("We hold that it was not unreasonable for the General Assembly to limit to ten years the period in which suits may be commenced against architects for design defects, in view of the legislative intent to avoid stale claims and the likelihood that most types of defects would reasonably be discovered within ten years of substantial completion"). *But see State Farm Fire and Casualty Co. v. All Electric, Inc.,* 99 Nev. 222, 660 P.2d 995 (1983).

construction defects by imposing the burden of proof upon the professionals doing the work; however, because of the harshness of that liability, and because over time the owner of the structure is in a better position to discover and to repair defects, the liability is limited to the specified ten year period. Additionally, this avoids stale claims against architects and encourages repairs by the owners. With this understanding of the law, we find that the classification of architects and contractors on the one hand and materialmen and other construction participants on the other made by Article 1483 is a constitutionally valid exercise of legislative authority.

### 2. Due Process

Plaintiffs claim that Article 1483 deprives them of due process of law because it bars suits against a class of potential defendants. The Fourteenth Amendment, provides in part: * * * nor shall any state deprive any person of life, liberty, or property without due process of law; * * *. U.S. Const.Amend. 14, sec. 1. This Due Process Clause has a substantive as well as procedural aspect which the United States Supreme Court has described as follows:

the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than life or liberty. The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest * * * it may not constitutionally authorize the deprivation of

such an interest, once conferred, without appropriate procedural safeguards.' In short, once it is determined that the Due Process Clause applies 'the question remains what process is due.'

*Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–1493, 84 L.Ed.2d 494 (1985).

■ In its substantive aspect the Due Process Clause also protects certain rights which, though not expressly included in the Constitution, are nonetheless considered a part of the fundamental liberty interests that are shielded from unreasonable interference by the state. *See Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). If a right which is fundamental in character is involved, the challenged statute will be carefully scrutinized whereas if the right in question is not fundamental a mere rationality standard, indistinguishable from the equal protection test, applies.[32] *Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978). However, a statute having merely indirect effect on the fundamental right will not be subjected to strict scrutiny. In *Zablocki, supra,* 434 U.S. at 386, 98 S.Ct. at 681 (1978),[33] the United States Supreme Court stated:

By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed. *See Califano v. Jobst,* 434 U.S. 47 [98 S.Ct. 95, 54 L.Ed.2d 228] [1977].

■ In Puerto Rico, the "right to sue," or rather the right of access to the courts,

---

**32.** The difference between the equal protection and due process analysis is that the focus in the latter is upon "unwarranted encroachment upon a constitutionally protected freedom" whereas the formers' is upon whether or not the legislative decision establishes a "discriminatory classification." *Zablocki,* 434 U.S. at 391–392, 98 S.Ct. at 683–684 (Stewart, J. concurring in the judgment).

**33.** The *Zablocki* majority ruled that the challenged statute violated the Equal Protection Clause. However, in doing so it determined that the right to marry was a fundamental liberty interest which the Court was bound to protect under the substantive aspect of the Due Process Clause.

though a recognized property right, *Torres v. Castillo Alicea,* 111 D.P.R. 792 (1981), is not a fundamental right. *Alicea v. Córdova Iturregui,* — D.P.R. —, 86 JTS 73 (June 30, 1986) (Statement to the contrary carried only a plurality of the Court). Additionally, the plaintiffs' right to sue is not being significantly affected by the state's reasonable policy decisions embodied in Article 1483 because they have full access to the courts and, subject to Rule 11, Fed.R. Civ.P., may sue anyone allegedly responsible for their damages pursuant to applicable law, which in this case excludes architects and contractors. Plaintiffs cannot argue that they have no due process of law when the law simply, and reasonably, bars their suit as to a few individuals. Therefore, the mere rationality standard applies to plaintiffs' due process claim, and we must reach the same result as we did in our equal protection analysis, that is, that the challenged statute is rationally related to a legitimate state purpose.

■ However, as we are dealing with Puerto Rico's protected property right to sue, we must consider what process is due plaintiffs. In this respect, the Due Process Clause generally protects citizens from arbitrary and capricious actions by the state. *Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *Texaco Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). The preceding discussion should make it clear that the Commonwealth did not arbitrarily enact Article 1483. The basic flaw in plaintiffs' claim is that they suggest that they are left wholly remediless. As the plaintiffs themselves argued in their equal protection challenge, the *plazo decenal* precludes recovery only from the architects and contractors, but not from the products suppliers and owners of the structure. Taken together, Articles 1483, 1807 and 1809 establish a unified scheme for imposition of liability. During the first ten years after construction, the architect, the contractor and the owner may be liable for damages caused by the *ruina* of the structure. Thereafter, potential liability for damages caused by the *ruina* shifts exclusively to the owner.[34] Thus, plaintiffs have legal recourse, they may still proceed against the owner of the building and others (in fact, the PSC has seen fit to sue 211 defendants, only a small fraction of which are architects or contractors). Additionally, this is not a case in which the plaintiffs are being asked to sue before they know they have a cause of action, as was the case in *Alicea, supra,* 86 JTS 73,[35] it is rather a limitation on who they can sue after a given period.[36] Nor

---

34. Materialmen are not included in this scheme because their potential liability does not arise from the *ruina* but is rather premised on the inherent qualities of the products they supplied to the work site. *Carreras, supra,* 111 D.P.R. at 822, 11 P.R.S.Ct.Off.Trans. at 1041 (In the case of materialmen "we would be dealing with the purchase and sale [*compraventa*] concept, to which, the ten-year liability does not apply").

35. Plaintiffs cite *Alicea,* 86 JTS 73, for the proposition that article 1483 violates the Puerto Rico Constitution's Due Process guarantees. We disagree. The *Alicea* court held that a statute which precluded *any* recovery for doctors' malpractice if the suit was filed two years after the injury was caused violated the Due Process Clause of the Puerto Rico constitution. The obvious, and crucial, distinction between the two year period in *Alicea* and the *plazo decenal* is that the former precluded *any* recovery if the suit was not brought within the legal period, whereas the latter precludes recovery only from the architects and contractors, but not from the products suppliers and owners of the structure.

We thus find that plaintiffs' reliance upon *Alicea* is misplaced.

36. The court is aware that many statutes of repose, particularly those on medical malpractice, have come under vigorous constitutional attack on due process grounds. However, we note that most courts holding such statutes unconstitutional on due process grounds were faced with situations in which plaintiffs were left wholly remediless, *see, e.g., Hardy v. VerMeulen,* 32 Ohio St.3d 45, 512 N.E.2d 626 (1987) (Medical malpractice statute violated due process clause because it extinguished plaintiffs' cause of action before he could reasonably have discovered his injury); *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984) (Medical malpractice statute of repose violated state constitution's Due Process Clause); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825 (1980) (Invalidating broad statute that sought to limit length and amount of exposure in medical malpractice cases), whereas in this case plaintiffs may pursue every legal remedy against those potential defendants who are not architects and contrac-

are plaintiffs excluded at the courthouse doors because they cannot afford to sue. *See Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (Unconstitutional to demand payment of court filing fees from indigent spouses seeking divorces). In short, the *plazo decenal* represents a reasonable legislative determination that, once ten years from the end of construction have passed, individuals such as plaintiffs may be entitled to every legal remedy from certain defendants other than architects and contractors.

Thus, we conclude that the *estatuto decenal* neither deprives any class of persons of the equal protection of the law, nor deprives plaintiffs of the process they are constitutionally entitled to.

## CONCLUSION

Because the *plazo decenal* has expired, all claims against Toro & Ferrer related to their participation in construction of the San Juan Dupont Plaza Hotel are barred by Article 1483 of the Puerto Rico Civil Code, 31 L.P.R.A. sec. 4124 (1930). Therefore, defendants Toro & Ferrer are entitled to summary judgment as a matter of law. Consequently, their Motion to Dismiss, filed June 26, 1987, Docket No. 224A, which we have treated as one for summary judgment, is hereby GRANTED.

Additionally, the motions requesting certification to the Puerto Rico Supreme Court, Docket Numbers 476A, 476B and 1076, are DENIED.

Partial judgment shall be entered accordingly.

IT IS SO ORDERED.

---

tors. In other words, this is not a case in which the action is extinguished before it accrues because *when* the action accrues plaintiffs may recover from the owner in possession and others involved in the project to the full extent of the law. *See* footnote 34, *supra,* and accompanying text; *cf. Boswell v. Phoenix Newspapers,*

*Inc.,* 152 Ariz. 9, 730 P.2d 186 (1986) (invalidating statute that limited available types of damages in defamation cases), *White v. Montana,* 203 Mont. 363, 661 P.2d 1272 (1983) (invalidating statute limiting recoverable types of damages in suits against the state and its subordinate political units).